THE HONORABLE BENJAMIN H. SETTLE

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

RANDOLFF SCOTT RUFFELL
WESTOVER and ANDREA WESTOVER,
husband and wife, and the marital
community composed thereof,

                  Plaintiff,

    v.

PROVIDENT LIFE AND ACCIDENT
INSURANCE COMPANY,

                  Defendant.

Case No.  3:20-cv-05931-BHS

DEFENDANT'S OPPOSITION TO
PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT REGARDING ERISA
PREEMPTION

## I. <u>INTRODUCTION AND RELIEF REQUESTED</u>

Plaintiff tries to avoid application of the Employment Retirement Income Security Act ("ERISA") to the Individual Disability Income ("IDI") Plan established by D.R. Horton for its highly-compensated employees by misstating facts and citing inapposite case law. For example, plaintiff tries to distance D.R. Horton from the broker it hired, HFCB, and completely ignores the fact that D.R. Horton agreed to and did in fact send an "employer endorsement letter" in which it called the IDI Plan "the D.R. Horton Individual Disability Insurance plan;" that D.R. Horton agreed to "promote" the IDI Plan to its employees; that D.R. Horton told its employees the IDI Plan was "***Our*** newest voluntary benefit;"[1] and that D.R. Horton agreed to assist employees with filing claims.

---

[1] Emphasis added.

DEFENDANT'S OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT
REGARDING ERISA PREEMPTION - 1
Case No.  3:20-cv-05931-BHS

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

1

2          Due to D.R. Horton's involvement in establishing, sponsoring and endorsing the Plan, the

IDI Plan is an ERISA-governed plan that is not exempted from application of ERISA. Plaintiff's

3    motion for summary judgment should be denied, and Provident's motion for dismissal of

4    plaintiff's state law claims based on ERISA preemption (Dkt. 33) should be granted.

5                           II. **STATEMENT OF FACTS**

6          To avoid repetition, Provident refers the Court to the Statement of Facts in Provident's

7    motion for dismissal of plaintiff's state law claims based on ERISA preemption. (Dkt. 33.) Below,

8    Provident addresses some of the more egregious misstatements in plaintiff's Statement of Facts.

9    A.    **Plaintiff Previously Asserted That ERISA Governed the IDI Plan.**

10         Plaintiff claims that he became disabled in February 2019, although he did not submit a

11   claim for disability benefits under the IDI Plan until over 14 months later in April 2020. (Dkt. 1 at

12   5.) Plaintiff did not submit required medical information and, consequently, Provident was unable

13   to render a decision on the claim until February 12, 2021, at which time it approved the claim.

14   (Dkt. 29-5.)

15         During the claim process, plaintiff (through his current attorney) repeatedly asserted that

16   ERISA governed the IDI Plan. *See, e.g.,* (Dkt. 29-2) (requesting documents "and all other

17   information to which Mr. Westover is entitled ***under the Employee Retirement Income Security***

18   ***Act ("ERISA")***"); (Dkt. 29-4) (asserting: "Unum's decision on Westover's LTD claim is overdue

19   ***in violation of ERISA***" and "Westover requests Unum render a decision based on the information

20   previously submitted ***in compliance with ERISA***.") (emphasis added).  Plaintiff inexplicably

21   changed his position when he filed suit (before Provident rendered a decision on his claim)

22   asserting claims under state law. (Dkt. 1.)

23   B.    **D.R. Horton Established, Promoted, and Endorsed the IDI Plan.**

24         In his motion, plaintiff makes several representations about D.R. Horton's involvement

25   with the IDI Plan that simply are not true.

26

27

DEFENDANT'S OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT
REGARDING ERISA PREEMPTION - 2
Case No.  3:20-cv-05931-BHS

First, plaintiff contends that D.R. Horton merely "help[ed] Provident publicize the policies." (*See* Dkt. 38 at 6:13-14.) This contention is not accurate and not supported by the testimony or evidence plaintiff cites. *Id.* Rather, D.R. Horton took numerous activities before and after implementation of the Plan. For example, in order to allow D.R. Horton to obtain an IDI Plan for its high-earning employees, Provident required that D.R. Horton hire an outside broker (HFCB) to handle enrollment and marketing and to tackle some of the responsibilities that D.R. Horton agreed to take on (such as educating employees about the Plan). (Dkt. 36, ¶ 6; Dkt. 36-3.) D.R. Horton hired HFCB to act as its broker. (Dkt. 34, ¶ 2.) D.R. Horton also agreed to follow a "communication strategy" to show employer support and promotion for the IDI Plan, which "will encompass an employer endorsement letter, the distribution of personalized enrollment materials for each employee and follow-up to each employee to review their personalized benefit proposal." (Dkt. 36-5.) In particular, D.R. Horton sent a pre-announcement email to eligible employees on May 1, 2018, with the subject "D.R. Horton Individual Disability Insurance plan," informing its employees that the "enrollment period for the D.R. Horton Individual Disability Insurance plan, called IDI has begun," and explaining: "**Why does D.R. Horton offer IDI?**" (Dkt. 35 at 17 (bold in original).)   In addition, with the pre-approval of D.R. Horton and on D.R. Horton's behalf, HFCB drafted and sent custom offer packets to each eligible employee. (Dkt. 34, ¶¶ 4, 8.) D.R. Horton purposely had HFCB include its logo on the offer packets so that its employees would know that the offer packet came from D.R. Horton. (Dkt. 35 at 13-14 (Strickland Dep. at 57:15-58:3).) The custom offer packet sent to Mr. Westover stated:



April 25, 2018

**Personal and Confidential**

**Dear Randolff Westover,**

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

> **D.R. Horton is pleased to inform you** that you can now protect more of your income should you experience a health crisis that prevents you from working. **D.R. Horton provides a Group Long-Term Disability (LTD) plan that protects up to 60% of your compensation; however, benefits are taxable. Our newest voluntary benefit, called IDI, can help you focus more on your health and less on financial worries during your time away from work.**
>
> **Use the following customized analysis to help you:**
> •    **Understand what coverage you currently have**
> •    **Determine whether your current coverage is sufficient or if you should consider the Individual Disability Insurance (IDI) policy.**
>
> **Carefully review your options in this personalized kit and make your decision by May 11th. If you have any questions about your options, you may call a policy consultant at 1-800-258-8429 or email <ins>customerservice@hfcb.com</ins>.**
>
> *** * ***
>
> •    **Questions?**
>     **<ins>We encourage you to call our plan administrator, HFCB, to fully understand your available coverage options</ins>.** Call 1-800-258-8429 Monday-Friday, 8:30 a.m. - 4:30 p.m. ET.

(Dkt. 34 at 8-14 (underlining added).)

Second, there is no evidence to support plaintiff's contention that D.R. Horton "desir[ed]" to keep the Provident policy separate from other benefit plans;[2] and plaintiff's contentions that Provident – and not D.R. Horton – conducted enrollment in the IDI Plan and prepared enrollment materials simply are not true. (See Dkt. 38 at 6:21-7:5.)[3] Instead, the evidence establishes that D.R. Horton agreed to endorse and educate employees about the IDI Plan. (Dkt. 35 at 15 (Strickland Dep. at 61:2-7).) D.R. Horton also hired HFCB to handle enrollment and administration, and

---

[2] The employee enrollment period for the IDI Plan was purposely set at a different period from the enrollment period for other D.R. Horton plans in order to spotlight the supplemental benefits available under the IDI Plan, and because only a limited group of D.R. Horton employees met the income threshold to be eligible to apply for the IDI Plan. (Dkt. 34, ¶ 5.) D.R. Horton expressed that it "liked having the enrollment for this product after the first if [sic] the year." (Dkt. 36-7.)

[3] In an apparent attempt to mislead the Court, plaintiff contends that "Provident's sales team created a plan to sell more policies by sending promotional materials to employees." (*See* Dkt. 38 at 7:4-6.) However, plaintiff cites testimony from Donna Dinsmore expressly addressing a different program sold to D.R. Horton employees *in 2006*. (Id.; *see also* Dkt. 47-2 (Dinsmore Dep. at 71:24-72:4).) The IDI Plan at issue in this case was not established by D.R. Horton until over ten years later in 2017, and plaintiff did not participate in the Plan until 2018.

DEFENDANT'S OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT
REGARDING ERISA PREEMPTION - 4
Case No.  3:20-cv-05931-BHS

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

HFCB agreed to provide sample communications/strategy to D.R. Horton for approval and to mail custom offer packets to employees' homes (Dkt. 36, ¶¶ 6, 10; Dkt. 34, ¶ 6, Ex. A.)  D.R. Horton agreed to provide information to "promote" the IDI Plan to its employees, and to send a pre-announcement email to eligible employees. *Id.*; *see also* Dkt. 35 at 9-10 (Strickland Dep. 30:14-31:6).)

Third, plaintiff misrepresents that D.R. Horton employees with questions were told "to contact either Provident or the broker …." (*See* Dkt. 38 at 7:19-21.) Employees were **not** told to contact Provident, but instead were directed to contact a "policy consultant at 1-800-258-8429 or email customerservice@hfcb.com." (Dkt. 34 at 9.) Both the phone number and email directed employees to contact D.R. Horton's broker and plan administrator, HFCB (Id., ¶ 9.)

D.R. Horton also negotiated favorable terms for its employees, such as a reduction of the income eligibility level from $150,000 to $110,000 annually;[4] an increase in the Guaranteed Standard Issuance amount from $8,000 to $10,000; removal of any age restriction on eligibility; relaxed underwriting standards, and a 25% premium discount (Dkt. 36, ¶¶ 5, 7, Ex. B.)

Finally, plaintiff's allegation that "[e]mployees were never told that D.R. Horton would have any role in administering the Provident policy" also is false. (See Dkt. 38 at 22-23.) Instead, employees were explicitly told in correspondence on D.R. Horton letterhead that "***D.R. Horton is pleased to inform you*** that you can now protect more of your income" by applying for "***Our*** newest voluntary benefit, called IDI," and that employees with any questions about coverage under the IDI Plan should contact "***our*** plan administrator, HFCB." (Dkt. 34 at 9, 14 (emphasis added).)

## C.    D.R. Horton Agreed to Provide Ongoing Administrative Services for the IDI Plan.

Plaintiff contends that D.R. Horton did not provide him guidance about the IDI Plan when he left his employment. (Dkt. 38 at 5:3-6.) However, when it established the IDI Plan, D.R. Horton agreed to provide ongoing support for the Plan, including assisting potentially eligible employees

---

[4] D.R. Horton specifically asked for the income threshold to be lowered from $150,000 to $110,000. (Dkt. 35 at 11 (Strickland Dep. at 36:8-14).)

DEFENDANT'S OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT
REGARDING ERISA PREEMPTION - 5
Case No.  3:20-cv-05931-BHS

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

1  with filing claims under the Plan and reaching out to any terminated employees to make sure they

2  were aware of their portability options:

3        **Ongoing Administration:**

4  -   D.R. Horton will send HFCB a quarterly Short Term Disability report so that
      they can review and see if there is anyone with an IDI policy that is currently

5        out on disability. ***If someone enrolled in the IDI program is out on disability***
      ***HFCB will confirm if the employee has started the claim process with***

6        ***Unum and if not will reach out to them to remind them that they have this***

7        ***coverage and ask if they need assistance in filing a claim***.

8  -   HFCB is able to direct bill those employees on a leave of absence. Paula [D.R.
      Horton Human Resources Department] will be following up with the Leave

9        Management Team to see if they would like for HFCB to provide this service
      or if they want to catch up any past due premium when the employee returns

10        to work.

11  -   ***HFCB will reach out to any terminated employees to make sure they are***
      ***aware of their portability options***.

12

13  (Dkt. 36-7 (emphasis added).)

14  ### III. <u>ARGUMENT</u>

15  **A.**    <u>**Standards to Determine ERISA Application.**</u>

16        Plaintiff argues that an ERISA plan cannot exist in the absence of an employer's

17  "administrative scheme." Dkt. 38 at 11-12. However, the cases plaintiff cites are inapposite and

18  do not support his argument. For example, in *Pegram v. Derdrich*, 530 U.S. 211, 120 S. Ct. 2143,

19  147 L. Ed. 2d 164 (2000), the issue before the Court was whether the defendant HMO could be

20  liable for breach of fiduciary duties under ERISA. Although the Court addressed whether an

21  ERISA plan existed, proof that the HMO acted as the administrator of the plan was required only

22  to support the plaintiff's claim for breach of fiduciary duty, not to establish the existence of a Plan

23  in the first place. *Id.* at 223.

24        Moreover, nowhere in *Pegram* did the Court require – as plaintiff contends – that the

25  ***employer*** administer benefits in order to create an ERISA plan. The other case plaintiff relies on,

26  *Fort Halifax Packing Co., Inc. v. Coyne*, 482 U.S. 1, 107 S. Ct. 2211, 96 L. Ed. 2d 1 (1987), is

27

DEFENDANT'S OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT
REGARDING ERISA PREEMPTION - 6
Case No.  3:20-cv-05931-BHS

1    similarly inapplicable to the issues presented here. The *Fort Halifax* case addressed only whether

2    a Maine statute requiring employers to pay a one-time severance payment to laid off workers in

3    the event of a plant closing was preempted by ERISA. Since the regulation required employers to

4    make the payment, the Court necessarily addressed whether the statute placed an administrative

5    burden on employers. *Id.* However, nowhere did the Court globally require that such an

6    administrative burden exist in all cases – regardless of subject matter – before ERISA applied to

7    the regulation. *Id.*

8         Instead, whether ERISA applies depends on the existence of the following five factors: (1)

9    a plan, fund or program (2) established or maintained (3) by an employer or employee

10   organization, or by both, (4) for the purpose of providing medical, surgical, hospital care, sickness,

11   accident, disability, death, unemployment or vacation benefits (5) to participants or beneficiaries.

12   *Kanne v. Connecticut Gen. Life Ins. Co*. 867 F.2d 489, 492 (9th Cir. 1989) (citing ERISA, 29

13   U.S.C. § 1002(1)). The existence of an ERISA plan is a question of fact, to be answered in light

14   of all of the surrounding facts and circumstances from the point of view of a reasonable person.

15   *Id.* at 492. The Court should evaluate the evidence presented on the issue under a preponderance

16   standard. *Bender v. Unum Group*, 2016 WL 5420156, *3 (N.D. Cal. Sept. 28, 2016).

17        Consistent with ERISA's broad purpose, the Ninth Circuit recognizes that an ERISA plan

18   can be established "rather easily." *Credit Managers Ass'n. v. Kennesaw Life & Acc. Ins. Co.*, 809

19   F.2d 617, 625 (9th Cir. 1987). Indeed, the purchase of insurance alone may be evidence that an

20   ERISA plan exists. *Kanne*, 867 F.2d at 492. "Even if an employer does no more than arrange for

21   a 'group-type insurance program,' it can establish an ERISA plan, unless it is a mere advertiser

22   who makes no contributions..." *Credit Managers*, 809 F.2d at 625.

23   **B.    ERISA Applies to the D.R. Horton IDI Plan.**

24        Here, there are two alternative ways in which the Court can find that the D.R. Horton IDI

25   Plan is governed by ERISA: "(1) the [IDI Plan] itself could be an ERISA Plan; or (2) the [IDI

26

27

DEFENDANT'S OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT
REGARDING ERISA PREEMPTION - 7
Case No.  3:20-cv-05931-BHS

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

1  Plan] could be part of a package of plans, some of which are ERISA Plans." *See Fisher v.*
2  *Prudential Ins. Co. of American*, 842 F. Supp. 397, 400 (N.D. Cal. 1993).

3  ### 1.   The IDI Plan Itself Qualifies as an ERISA Plan Under the Five-Factor Test

4  The IDI Plan itself qualifies as an ERISA plan as it is: (1) a plan, fund or program (2)
5  established or maintained (3) by an employer, (4) for the purpose of providing disability benefits
6  (5) to the participants or beneficiaries. *See Kanne*, 867 F.2d at 492.

7  <u>First, a Plan exists</u>. Although ERISA generally requires the plan to be established by a
8  "written instrument," 29 U.S.C. § 1102(a)(1), a formal plan document or summary plan description
9  is not necessary; rather, an insurance policy itself can be the "written instrument" and constitute
10  an ERISA plan. *Cinelli v. Security Pacific Corp.*, 61 F.3d 1437, 1441 (9th Cir. 1995). Here, as
11  acknowledged by D.R. Horton, the D.R. Horton IDI Plan consists of the policies issued by
12  Provident to D.R. Horton's employees. (Dkt. 35 at 6 (Strickland Dep. at 11:3-6).) "[W]here
13  multiple policies are purchased, covering a class of employees, that is significant evidence of the
14  establishment of a plan." *McCann v. Unum Provident*, 921 F. Supp. 2d 353, 369 (D.N.J. 2013);
15  *see also Donovan v. Dillingham*, 688 F.2d 1208, 1373 (11th Cir. 1982) ("[T]he purchase of a group
16  policy or multiple policies covering a class of employees offers substantial evidence that a plan,
17  fund, or program has been established."). And courts in the Ninth Circuit repeatedly hold that
18  benefits provided through the issuance of multiple individual insurance policies constitute a Plan
19  under ERISA and satisfy the first criteria. *See, e.g.*, *Klungvedt v. Unum Group*, 2012 WL
20  12873762, *3 (D. Ariz. Nov. 1, 2012) ("the fact that a plaintiff has an individual disability
21  insurance policy does not necessarily mean that his policy is not governed by ERISA"); *Zide v.*
22  *Provident Life and Acc. Ins. Co.*, 2011 WL 12566818, *5 (C.D. Cal. April 13, 2011) (holding that
23  although "plan was accomplished through the issuance of a number of individual policies, the first
24  element [to establish an ERISA plan] is met"); *Pierson v. Continental Cas. Co.*, 2000 WL
25  1879895, *5 (C.D. Cal. Jun. 22, 2000) ("Courts have recognized, however, that employee
26  welfare benefit plans can be funded through the purchase of individual policies.") (citing *Peterson*

27

DEFENDANT'S OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT
REGARDING ERISA PREEMPTION - 8
Case No.  3:20-cv-05931-BHS

1    *v. American Life & Health Ins. Co.,* 48 F.3d 404, 407 (9th Cir.1995)). The policies constitute the

2    Plan, plaintiff's policy is part of the Plan, and factor 1 is satisfied. *See McCann*, 921 F. Supp. 2d

3    at 365 (supplemental individual disability income plan, which complemented employees' core

4    LTD plans and was available for purchase by limited group of hospital employees, constituted

5    ERISA plan).

6         Factors 2 and 3 also are met because D.R. Horton established the IDI Plan. ERISA, 29

7    U.S.C. § 1002(3) requires a plan be either "established or maintained … by an employer ..."  The

8    "or" is disjunctive, and requires only that the plan be established *or* maintained, not both

9    established *and* maintained by the employer. *Id.* Here, D.R. Horton established its IDI Plan through

10   a series of actions. D.R. Horton negotiated the terms of the Plan, communicated directly with its

11   employees about the Plan, and authorized HFCB to send marketing materials to its employees with

12   the D.R. Horton logo for the purpose of conveying D.R. Horton's endorsement of the plan. (Dkt.

13   36, ¶¶ 5, 7; Dkt 35 at 17; Dkt. 34, ¶¶ 4, 6, 8, Ex. B.) And although ongoing plan maintenance is

14   not a prerequisite to find that a Plan exists, D.R. Horton and its broker, HFCB, also continue to

15   provide administrative services for the Plan such as assisting employees with claims and educating

16   employees about benefit options (Dkt. 36-7.) These facts are more than sufficient to satisfy factors

17   2 and 3. *See McCann,* 921 F. Supp. 2d at 369 (holding that employer "maintained" ERISA plan

18   by "assum[ing] some responsibility for the administration of the plan by engaging LEI as a broker,

19   to contact [employees] and make them aware of the opportunity to purchase supplemental

20   insurance under the [plan]").

21        Factor 4 is established, because disability benefits, offered under the Plan, are a type of

22   benefit expressly governed by ERISA under 29 U.S.C. § 1002(1), which provides that an employee

23   benefit plan includes a plan that offers "benefits in the event of ... disability."

24        Finally, Factor 5 is satisfied because eligible high-income employees are participants in the

25   IDI Plan. ERISA defines "participant" as "any employee or former employee of an employee, or

26   any member or former member of an employee organization, who is or may become eligible to

27

DEFENDANT'S OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT
REGARDING ERISA PREEMPTION - 9
Case No. 3:20-cv-05931-BHS

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

1  receive a benefit of any type from an employee benefit plan which covers employees of such
2  employer." 29 U.S.C. § 1002(7).

3        Plaintiff makes only two arguments against finding that the IDI Plan is an employee benefit
4  plan governed by ERISA under the five-factor test. (Dkt. 38 at 16-17.) Specifically, plaintiff argues
5  that the IDI Plan is not an ERISA-governed plan either because (1) "there is no 'administrative
6  scheme' by an employer;" or (2) D.R. Horton "fail[ed] to follow the formalities necessary to create
7  an ERISA plan." (Id. at 16:3, 17:11-12.) However, neither of these is required to establish the
8  existence of an ERISA-governed Plan under the five-factor test set forth by the Ninth Circuit Court
9  of Appeals, *Kanne*, 867 F.2d at 492, and neither argument is sufficient to remove the D.R. Horton
10 IDI plan from ERISA.

11       First, as noted previously, there is no requirement of an employer "administrative scheme"
12 in order for ERISA to govern. Rather, the *Fort Halifax* case on which plaintiff relies merely
13 addressed whether a Maine statute requiring employers to pay a one-time severance payment to
14 laid off workers in the event of a plant closing was preempted by ERISA. 482 U.S. 1. Since the
15 regulation required employers to make the payment, the Court necessarily addressed whether the
16 statute placed an administrative burden on employers, but nowhere did the Court hold that an
17 employer-administered "scheme" is necessary before ERISA applied to a Plan that otherwise
18 satisfied all five factors of the *Kanne* test. *Id.* Plaintiff's reliance on *Golden Gate Restaurant Ass'n*
19 *v. City and County of San Francisco*, 546 F.3d 629 (9th Cir. 2008) is similarly misplaced, since the
20 Court in *Golden Gate* merely held that handouts provided by the City to its low-income residents
21 did not constitute an ERISA Plan because (1) no employer was involved whatsoever (the benefit
22 program was available to residents of the City "regardless of employment status") and (2) any
23 employer allowing its employees to sign up for the program had no control over employee
24 eligibility and never signed any contract with the City. 546 F.3d at 653-54. Here, by contrast, D.R.
25 Horton established the IDI Plan for its employees, determined eligibility for the Plan,
26 communicated directly with its employees about the Plan, authorized HFCB to send marketing
27

DEFENDANT'S OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT
REGARDING ERISA PREEMPTION - 10
Case No.  3:20-cv-05931-BHS

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

materials to its employees with the D.R. Horton logo for the purpose of conveying D.R. Horton's endorsement of the plan, and continues to provide administrative services for the Plan. (Dkt. 36, ¶¶ 5, 7; Dkt. 36-7; Dkt. 35 at 17; Dkt. 34, ¶¶ 4, 6, 8, Ex. B.)

Second, the fact that D.R. Horton did not file a Form 5500 for the IDI Plan does not mean the Plan is not ERISA-regulated. Plaintiff's reliance on *Nosrati v. Provident Life & Accid. Ins. Co.*, 383 F. Supp. 3d 990 (C.D. Cal. 2019), is misplaced because the issue in *Nosrati* was ***not*** – as here – whether the employer's actions were sufficient to prove that the employer established the plan at issue. Instead, the court addressed the issue of whether those actions were performed by plaintiff's employer (USC) or by a separate organization that the court found was not affiliated with the employer (USCP). *Id.* at 995-96 (holding that "Provident failed to establish a *prima facie* case that USC was an employer in relation to the USCP Plan, or that USCP was an employee organization"). Here – unlike in *Nosrati* – there is no dispute that D.R. Horton was plaintiff's employer. Other cases cited by plaintiff are similarly inapplicable. For example, in *Gonzales v. Unum Life Ins. Co.*, 2009 WL 3226519 (S.D. Cal. Oct. 2, 2009) (cited on page 15 of Plaintiff's motion), the Court held that although the individual disability policy ***was in fact*** an ERISA-governed plan, it was exempted from ERISA under the safe harbor regulation.

Nevertheless, D.R. Horton's failure to file a Form 5500 for the IDI Plan does not remove the plan from ERISA applicability. *See Scott v. Gulf Oil Corp.*, 754 F.2d 1499, 1503 (9th Cir. 1985) (holding that Gulf's failure to file a Form 5500 "does not exempt Gulf from coverage by ERISA").[5] As recognized by the Ninth Circuit Court of Appeals, otherwise employers "could escape ERISA's coverage merely by failing to comply with its requirements." *Id*. at 1503. In the Ninth Circuit, "[o]nce established, ERISA operates to protect an employee's interest in the welfare benefit program regardless of whether the employer complies with the administrative and reporting

---

[5] The *Scott* case was implicitly overruled on other grounds. *See Golden Gate Restaurant Ass'n*, 546 F.3d at 652 (addressing whether employer spending requirement ordinance created a "plan" under ERISA).

DEFENDANT'S OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT
REGARDING ERISA PREEMPTION - 11
Case No.  3:20-cv-05931-BHS

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

1    requirements detailed under ERISA." *Blau v. Del Monte Corp.,* 748 F.2d 1348, 1352 (9ᵗʰ Cir.

2    1984).[6]

3           **2.    The IDI Plan Is a Component of the D.R. Horton Employee Benefit Plan.**

4           Alternatively, the IDI Plan is governed by ERISA because it is a component of the overall

5    D.R. Horton employee benefit plan. In order to determine whether the IDI Plan is governed by

6    ERISA, the Court should consider D.R. Horton's employee benefit program as a whole. *See Cox*

7    *ex rel. Cox v. Reliance Standard Life Ins. Co.*, 2013 WL 2156546 at *5 (E.D. Cal. 2013) (internal

8    citations omitted). As *Cox* explained, cases from the Seventh, Tenth and Eleventh Circuits concur

9    with the Ninth Circuit rule that ERISA's application is determined by the employee benefit

10   program as a whole rather than the specific insurance benefits available thereunder. *See Postma v.*

11   *Paul Revere Life Ins. Co.*, 223 F.3d 533, 538 (7th Cir. 2000) ("For purposes of determining whether

12   a benefit plan is subject to ERISA, its various aspects ought not be unbundled."); *Gaylor v. John*

13   *Hancock Mut. Life Ins. Co.*, 112 F.3d 460, 463 (10th Cir. 1997) ("For purposes of satisfying the

14   safe harbor provision, Ms. Gaylor attempts to sever her optional disability coverage from the rest

15   of the benefits she received through her employer's plan. This cannot be done because the

16   [optional] coverage was a feature of the Plan, notwithstanding the fact that the cost of such

17   coverage had to be contributed by the employee."); *Loren v. Blue Cross & Blue Shield of Mich.*,

18   505 F.3d 598, 606 (6th Cir. 2007) ("We conclude that Defendant has not overcome the

19   presumption that the employee health benefits offered by an employer constitute a single ERISA

20   plan.").

21          Plaintiff argues that the IDI Plan is not part of the overall D.R. Horton benefit plan based

22   on four arguments, none of which are sufficient to support plaintiff's position. First, the fact that

23   the pitch kits (drafted by D.R. Horton's broker with D.R. Horton's pre-approval) warn that benefit

24   decisions are rendered under the core benefit and IDI Plan "independent of each other" in no way

25   removes the IDI Plan from the overall D.R. Horton benefit plan. Different insurers often

26   ────────────
     [6] *abrogation on other grounds recognized by Dytrt v. Mtn. States Tel. & Tel. Co.,* 921 F.2d 889 (9th Cir.1990).

27

underwrite different benefits under employer plans, and the fact that each insurer will render separate benefit decisions does not mean that the differing components of the plan are separate. And plaintiff's argument that the pitch kits "directed employees with questions to contact Provident directly" is simply false. Rather, D.R. Horton employees were directed to contact a "policy consultant at 1-800-258-8429 or email customerservice@hfcb.com." (Dkt. 34 at 9.) Both the phone number and email directed employees to contact D.R. Horton's broker and plan administrator, HFCB, not Provident (Id., ¶ 9.)

Second, the IDI Plan was purposely set on a different enrollment schedule in order to highlight the benefits (and help D.R. Horton meet its enrollment quota to be able to continue to offer the plan). The IDI Plan also was presented separately from other benefits offered by D.R. Horton because the IDI Plan was not available to all employees; instead, only a select group of highly-compensated employees were eligible to apply for the IDI Plan.

Third, D.R. Horton agreed to and in fact continued to administer certain aspects of the IDI Plan. For example, employees were explicitly told in correspondence on D.R. Horton letterhead that "**D.R. Horton is pleased to inform you** that you can now protect more of your income" by applying for "**Our** newest voluntary benefit, called IDI," and that employees with any questions about coverage under the IDI Plan should contact "**our** plan administrator, HFCB." (Dkt. 34 at 9, 14 (emphasis added).)

Thus, the IDI Plan – even if not by itself considered an ERISA plan – is at least a component of the overall D.R. Horton employee benefit plan. In similar circumstances, the court in *Bender*, 2016 WL 5420156, held that the plaintiff's IDI policy issued by Unum as supplemental disability coverage for high-earning employees was issued pursuant to the employer's supplemental disability plan and, therefore, governed by ERISA.

**C.  The Safe Harbor Factors Do Not Exclude the IDI Plan From ERISA's Broad Reach.**

Under the safe harbor exemption, a plan is exempt from ERISA coverage only if ***all four*** of the following requirements are met:

DEFENDANT'S OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT
REGARDING ERISA PREEMPTION - 13
Case No. 3:20-cv-05931-BHS

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

**(1)** *No contributions are made by an employer* or employee organization;

(2) Participation the program is completely voluntary for employees or members;

(3) The *sole functions* of the employer or employee organization with respect to the program are, *without endorsing the program*, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and

(4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.

29 C.F.R. § 2510.3-1(j); *Stuart v. Unum Life Ins. Co. of Am.*, 217 F.3d 1145, 1153 (9th Cir. 2000) (noting that the Ninth Circuit has "uniformly adopted the position that a group insurance plan cannot be excluded from ERISA coverage when an employer fails to satisfy *any one* of the four requirements of the safe harbor regulation") (emphasis added). As the party asserting application of the safe harbor provision, *plaintiff* has the burden of proving that the provision removes the Plan from the sphere of ERISA's coverage. *See McCann*, 921 F. Supp. 2d at 358.[7]

Here, two of the safe harbor factors (Factors 1 and 3) are absent, although only one is needed to find the regulatory exemption inapplicable. D.R. Horton is considered to have contributed to the IDI Plan by obtaining favorable terms for its employees including a significantly reduced premium. In addition, D.R. Horton clearly endorsed the IDI Plan and did not act as a "mere advertiser." Therefore, the IDI Plan remains governed by ERISA.

**1.**   __Factor 1: D.R. Horton Contributed to the IDI Plan.__

With respect to the first factor, plaintiff acknowledges that he received a discounted premium, but alleges that this fact is "immaterial." (Dkt. 38 at 18:11) Plaintiff's position is simply wrong, and his reliance on a case out of the Eastern District of Tennessee, *Gooden v. Unum Life Ins. Co. of Amer.*, 181 F. Supp. 3d 465 (E.D. Tenn. 2016) is misplaced. Rather, numerous district courts – including those in the Ninth Circuit – hold that a premium discount that the insured

---

[7] Plaintiff cites no authority to support his repeated contention that Provident – not plaintiff – has the burden of proof on the safe harbor factors. (See Dkt. 38 at 18-22.)

DEFENDANT'S OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT
REGARDING ERISA PREEMPTION - 14
Case No.  3:20-cv-05931-BHS

employees would not have received absent the employer's offering of the Plan is a "contribution" sufficient to render the safe harbor regulation inapplicable. *See, e.g., Bommarito v. Northwestern Mut. Life Ins. Co.*, 2018 WL 1256713, *4 (E.D. Cal. Mar. 12, 2018) (holding that the employer "need not have paid for the premiums in order to have contributed to the coverage;" rather, "[b]y facilitating discounted premiums through a multi-life premium discount, [the employer] 'contributed' to the program, regardless of whether it actually paid for the premiums or not); *Zide*, 2011 WL 12566818 at *8 ("[T]he weight of authority counsels in favor of a conclusion that such a [premium] discount is a 'contribution' by an employer within the meaning of the ERISA safe harbor provision."); *see also McCann*, 921 F. Supp. 2d at 366 ("[G]roup discounts applied to employee insurance policies issued pursuant to an employee welfare benefit plan, constitute employer contributions."); *Harding v. Provident Life & Accid. Ins. Co.*, 809 F. Supp. 2d 403, 417-18 (W.D. Penn. 2011) ("Plaintiff cannot meet the first element [of Safe Harbor regulation] as the undisputed evidence demonstrates that [the employer] made a contribution to Plaintiff, as [its] employees who purchased policies were all given a twenty-percent (20%) discount on their premiums ***by virtue of their participation in a group***…. [W]hen discounted premiums are offered to a group of employees, the Safe Harbor regulations are not applicable and ERISA governs.") (emphasis added).

In the other case on which plaintiff relies, *Rubin v. Guardian Life Ins. Co. of Amer.*, 174 F. Supp. 2d 1111 (D. Or. 2001), the court did not even address whether an employer contributed to the plan under the first Safe Harbor factor, but ***only*** addressed whether the employer ***endorsed*** the plan. *See McCann*, 921 F. Supp. 2d at 366, n. 7 (holding that *Rubin* has no application to the question of whether the employer contributed to the Plan under the first Safe Harbor factor).

The 25% discount obtained by D.R. Horton for its employees covered under the IDI Plan, including for Westover's Policy, qualifies as "contribution" to the Plan. As a result, the safe harbor regulation as to lack of contribution is absent, and ERISA applies to the D.R. Horton IDI Plan.

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

1

2.      **Factor 3: D.R. Horton Endorsed the IDI Plan.**

2      With respect to factor 3, "[a]n employer will be said to have endorsed a program within

3  the purview of the Secretary's safe harbor regulation if, in light of all the surrounding facts and

4  circumstances, an objectively reasonable employee would conclude on the basis of [its] actions

5  that the employer had not merely facilitated the program's availability but had exercised control

6  over it or made it appear to be part and parcel of [its] own benefit package." *Pierson*, 2000 WL

7  1879895 at *6 (quoting *Johnson v. Watts Regulator Co.*, 63 F.3d 1129, 1135 (1st Cir. 1995)). The

8  test is whether, "upon examining all of the relevant circumstances, there is some factual showing

9  on the record of substantial employer involvement in the creation or administration of the plan."

10  *Bender*, 2016 WL 5420156 (quoting *Thompson v. Am. Home Assur. Co.*, 95 F.3d 429, 436 (6th Cir.

11  1996)).

12      In the main case plaintiff relies on, *Johnson v. Watts Regulator Co.*, the Court held that the

13  primary consideration regarding endorsement is whether the employer's communications would

14  "lead[] employees reasonably to conclude that the program is one established or maintained by the

15  communicator." *Johnson*, 63 F.3d at 1134. The Court found that an employer who was ***not***

16  involved in preparing sales brochures did not endorse the program, but distinguished its conclusion

17  from that reached in another case, *Hansen v. The Continental Ins. Co.*, 940 F.2d 971, 973 (5th Cir.

18  1991), on the basis that in *Hansen*, the employer (1) allowed its logo to be embossed on employee

19  communications and (2) the employer communication in *Johnson* referenced the plan as "***a plan***;"

20  as opposed to use of the term "***our plan***" in *Hansen*. *Johnson*, 63 F.3d at 1137 ("In the difference

21  between "our plan" and "a plan" lies the quintessential meaning of endorsement. If a plan or

22  program is the employer's plan or program, the safe harbor does not beckon."); *see also Verdon v.*

23  *AIG Life Ins. Co.*, 118 Wn. App. 449, 454-55, 76 P.3d 283 (2003) (discussing critical factual

24  distinctions between *Johnson* and *Hansen*).

25      Here, D.R. Horton purposely placed its logo on employee communications so that

26  employees would understand that the materials came from the employer and referenced the IDI

27

DEFENDANT'S OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT
REGARDING ERISA PREEMPTION - 16
Case No.  3:20-cv-05931-BHS

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

Plan in its communications to employees as "***Our*** newest voluntary benefit, called IDI." (Dkt. 35 at 13-14 (Strickland Dep. at 57:15-58:3); Dkt. 34 at 9 (emphasis added).) Thus, the facts of this case are equivalent to *Hansen*, in which the Court held that allowing its logo to be embossed on employee communications and referring to the plan as "our plan" were sufficient to establish employer endorsement.

The other cases plaintiff cites also do not support his position. For example, in *Schwartz v. Provident Life & Accid. Ins. Co*., 280 F. Supp. 2d 937 (D. Ariz. 2003), the Court held that ERISA did not apply to an individual disability policy the plaintiff purchased from his friend, an insurance broker. The plaintiff's employer had no involvement whatsoever in determining eligibility criteria for coverage or the application process. In addition, unlike D.R. Horton here, the employer also did not distribute any information whatsoever about the plan.

D.R. Horton clearly endorsed the IDI Plan, and plaintiff cannot meet his burden of proving the third Safe Harbor factor.

## IV. <u>CONCLUSION</u>

The D.R. Horton IDI Plan satisfies all five criteria under the ERISA statute, and thus qualifies as an ERISA plan. One or more of the safe harbor regulatory exemptions is absent, and the exemption does not exclude the D.R. Horton IDI Plan from ERISA's comprehensive scheme. The long-term disability insurance policy under which Plaintiff claims benefits is part of an ERISA plan, and plaintiff's motion should be denied.

DATED this 12th day of April, 2021.

LANE POWELL PC

By: *s/ Stephania Denton*
    D. Michael  Reilly, WSBA No. 14674
    reillym@lanepowell.com
    Stephania Denton, WSBA No. 21920
    dentons@lanepowell.com
    Telephone:  206.223.7000
Attorneys for Defendant Provident Life and Accident Insurance Company

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000 FAX: 206.223.7107