HON. JUDGE BENJAMIN H. SETTLE

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA**

| | |
|---|---|
| RANDOLFF SCOTT RUFFELL WESTOVER and ANDREA WESTOVER, husband and wife, and the marital community composed thereof, | No. 3:20-cv-05931-BHS |
| Plaintiffs, | THE WESTOVERS' OPPOSITION TO PROVDIENT'S MOTION TO DISMISS STATE LAW CLAIMS BASED ON ERISA PREEMPTION; |
| v. | MOTION TO STRIKE; |
| PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY, | AND |
| Defendant. | ALTERNATIVE REQUEST FOR DISCOVERY PURSUANT TO FED. R. CIV. P. 56(D) |
| | NOTE ON MOTION CALENDAR: April 16, 2021 |

THE WESTOVERS' OPPOSITION TO
PROVDIENT'S MOTION TO DISMISS
STATE LAW CLAIMS BASED ON ERISA
PREEMPTION; MOTION TO STRIKE AND
ALTERNATIVE REQUEST FOR
DISCOVERY PURSUANT TO FED. R. CIV.
P. 56(D)
(No. 3:20-cv-05931-BHS) - 1

**RUIZ & SMART PLLC**
1200 Fifth Ave., Ste. 1220
Seattle, WA 98101
Tel. 206-203-9100 Fax 206-785-1702

## I.    INTRODUCTION

Provident's Motion to Dismiss identifies insufficient employer involvement to transform Mr. Westover's individual disability insurance policy into a component of an employee benefit plan governed by the Employee Retirement Income Security Act (29 U.S.C. § 1001, *et seq*.; "ERISA"). Provident repeatedly emphasizes that Mr. Westover was able to purchase the policy only because he was employed by D.R. Horton. But ERISA does not govern benefits of employment; it governs employee benefit "plans."

Provident's failure to proffer admissible evidence establishing that its policy was part of an employee benefit "plan" is fatal to its motion. Provident cannot show the policy was part of D.R. Horton's ERISA Plan because D.R. Horton deliberately separated the policy from its Plan. Nor can Provident show that the policy comprises its own plan given the lack of D.R. Horton's involvement in the administration of the policy and the policy's lack of ERISA's formal requirements.

Even if Provident had established evidence of a plan, it still fails to prove its ERISA preemption defense because it cannot overcome the elements of ERISA's "safe harbor." Provident's protests that the policy provided Mr. Westover benefits he would not have received absent employment does not overcome the safe harbor, which is intended to allow D.R. Horton to do just that: procure desirable insurance for Mr. Westover without invoking ERISA. And Provident's assertion that the conduct of D.R. Horton's broker should be imputed to D.R. Horton to overcome the safe harbor relies on evidence that was not timely disclosed in

THE WESTOVERS' OPPOSITION TO
PROVDIENT'S MOTION TO DISMISS
STATE LAW CLAIMS BASED ON ERISA
PREEMPTION; MOTION TO STRIKE AND
ALTERNATIVE REQUEST FOR
DISCOVERY PURSUANT TO FED. R. CIV.
P. 56(D)
(No. 3:20-cv-05931-BHS) - 2

RUIZ & SMART PLLC
1200 Fifth Ave., Ste. 1220
Seattle, WA 98101
Tel. 206-203-9100 Fax 206-785-1702

discovery. The Court should deny Provident's Motion to Dismiss and grant the Westovers' Motion for Summary Judgment.

## II.   QUESTIONS PRESENTED

1.   **Applicable legal standard.** Should the Court construe Provident's motion to dismiss as a summary judgment motion given Provident relies on evidence outside the pleadings? **Yes.**

2.   **Existence of an ERISA plan.** Has Provident met its burden to prove that the policy was issued through an ERISA plan, where Provident's evidence shows that the policy was carefully segregated from D.R. Horton's ERISA plan and that the policy lacks the administrative and formal requisites necessary to comprise its own ERISA plan? **No.**

3.   **"Contribution" element of ERISA's safe harbor.** Provident offered D.R. Horton employees the same premium discount it offers every time it sells this type of policy. Does this discount mean that D.R. Horton contributed to the policy premiums within the meaning of ERISA? **No.**

4.   **"Endorsement" element of ERISA's "safe harbor".** D.R. Horton performed ministerial tasks to help Provident promote the policy while remaining neutral regarding the benefit. Has Provident proven that D.R. Horton endorsed the policy sufficient to defeat the safe harbor? **No.**

THE WESTOVERS' OPPOSITION TO
PROVDIENT'S MOTION TO DISMISS
STATE LAW CLAIMS BASED ON ERISA
PREEMPTION; MOTION TO STRIKE AND
ALTERNATIVE REQUEST FOR
DISCOVERY PURSUANT TO FED. R. CIV.
P. 56(D)
(No. 3:20-cv-05931-BHS) - 3

RUIZ & SMART PLLC
1200 Fifth Ave., Ste. 1220
Seattle, WA 98101
Tel. 206-203-9100 Fax 206-785-1702

### III.    FACTUAL BACKGROUND

**A.    D.R. Horton carefully segregated the Provident policy from its ERISA plan.**

At the behest of its insurance broker, beginning in 2005, D.R. Horton executed agreements drafted by Provident providing that Provident would offer individual disability policies to its employees, with D.R. Horton helping Provident promote the policies and acting as a conduit for employees' premium payments. Dkt. No. 42, 43, and 44; Dkt. No. 41-3 (Deposition of Kathy Strickland; "Strickland Dep.") at 38:18-40:1 and 45:22-46:2; Dkt. No. 41-8 (Deposition of Donna Dinsmore; "Dinsmore Dep.") at 49:19-22, 50:11-25, 54:1-56:14, and 58:18-59:22. The policy documents were Provident's standard boilerplate and the premium rates were set at the same discounted level Provident automatically offers anyone purchasing insurance under similar circumstances. Dinsmore Dep. at 17:19-18-6, 21:20-25, and 25:6-25; Strickland Dep. at 14:18-15:12, and 50:6-13. Provident processed applications and drafted and distributed policy documents, and policy updates, without D.R. Horton's involvement. Strickland Dep. at 11:23-13:2, 18:18-19:5, 21:3-21, and 34:13-35:6; Dkt. No. 41-11, 41-12, and 41-13; Dinsmore Dep. at 18:7-18; 44:7-11.

D.R. Horton kept this policy separate from its ERISA plan, the D.R. Horton Employee Healthcare Plan (the "Plan"). Strickland Dep. at 22:17-23:1. The Plan's group disability insurance is provided by a different carrier from Provident, Life Insurance Company of North America. Strickland Dep. at 23:11-24:10. All D.R. Horton ERISA Plan documents—including Form 5500 —omit Provident and its individual disability policies. Strickland Dep. at 21:23-24:10, 22:21-23:1, and 27:5-28:9; Dkt. No. 41-6, 41-5, and 41-4. D.R. Horton did not include

THE WESTOVERS' OPPOSITION TO
PROVDIENT'S MOTION TO DISMISS
STATE LAW CLAIMS BASED ON ERISA
PREEMPTION; MOTION TO STRIKE AND
ALTERNATIVE REQUEST FOR
DISCOVERY PURSUANT TO FED. R. CIV.
P. 56(D)
(No. 3:20-cv-05931-BHS) - 4

**RUIZ & SMART PLLC**
1200 Fifth Ave., Ste. 1220
Seattle, WA 98101
Tel. 206-203-9100 Fax 206-785-1702

the Provident policy at the Plan's annual enrollment meetings or provide information about the Provident policy to employees. Dkt. No. 40 (Declaration of Mr. Westover; "Westover Dec.") at ¶¶ 4-10; Strickland Dep. at 27:5-29:9; Dkt. No. 41-2 and 41-7. Employees were told that the Provident policy "does not coordinate with" the D.R. Horton Plan benefits, that claims decisions under the policy are "rendered independent" of the D.R. Horton Plan benefits, and that any statements Provident made in comparing its policy to the D.R. Horton Plan benefits were purely illustrative. Dkt. No. 41-10 at DR HORTON_000483. The Provident policy contains none of the ERISA-related information included in the documents for the D.R. Horton ERISA Plan. *Compare* Dkt. No. 41-9 *with* Dkt. No. 41-5 and 41-6.

## B.   D.R. Horton limited its involvement to helping Provident promote the policy and acting as a premium conduit.

Unlike the D.R. Horton ERISA Plan, for which D.R. Horton is the Plan Administrator, Provident performs all the administrative functions for its individual disability policies without D.R. Horton's involvement. Dkt. No. 41-5 at WESTOVER_001224; Strickland Dep. at 12:19-13:2; 35:17-20; 37:10-38:16; Dinsmore Dep. at 58:18-59:22; 79:11-19; 85:14-88:15. D.R. Horton has no discretion to investigate claims, interpret the policy, cancel the policy, or compel Provident to pay benefits. Strickland Dep. at 17:8-18:16, 37:10-38:16. D.R. Horton makes no annual reports, provides no policy updates, and disburses no information about the terms of the policy. Strickland Dep. at 12:19-13:2, 23:2-4, 25:3-19, and 28:19-29:9.

D.R. Horton helped Provident publicize the policy to employees but had minimal involvement in preparing the promotional materials. Strickland Dep. at 29:19-31:11. Enrollment

THE WESTOVERS' OPPOSITION TO PROVDIENT'S MOTION TO DISMISS STATE LAW CLAIMS BASED ON ERISA PREEMPTION; MOTION TO STRIKE AND ALTERNATIVE REQUEST FOR DISCOVERY PURSUANT TO FED. R. CIV. P. 56(D)
(No. 3:20-cv-05931-BHS) - 5

**RUIZ & SMART PLLC**
1200 Fifth Ave., Ste. 1220
Seattle, WA 98101
Tel. 206-203-9100 Fax 206-785-1702

largely occurred through the dissemination of so-called "pitch kits" intended by Provident and

the broker (who received commissions from the sale of the policies) to sell more policies.

Dinsmore Dep. at 29:1-8, 30:12-17, 35:11-25, 37:3-10, 42:5-43:7; 44:2-6, 69:9-19 and 72:5-19.

These materials gave employees the choice whether to enroll, never suggested D.R. Horton

controlled the policy, and never mentioned ERISA. Dkt. No. 41-10; Westover Dec., ¶¶ 7-12;

Strickland Dep. at 28:2-29:9; 29:19-25, 30:6-13. Employees were never told that D.R. Horton

would have any role in administering the Provident policy. Dinsmore Dep. at 85:14-86:4; 87:18-

22-88:15. Besides allowing Provident to add a D.R. Horton logo to the pitch kits, D.R. Horton

had no substantive input into these materials. Strickland Dep. at 30:6-13, 55:19-56:14;

Dinsmore Dep. at 45:10-46:10. D.R. Horton made no effort to urge employees to enroll.

Westover Dec. ¶ 12; Strickland Dep. at 31:12-18; 32:3-7.

Once an employee purchased the policy, D.R. Horton served purely as a premium

conduit: it handles no funds but simply routes employees' premiums to Provident via paycheck

deductions. Strickland Dep. at 17:16-19, 35:7-16, 39:14-16, and 44:12-45:4. It maintains no

administrative scheme for investigating claims regarding the Provident policy, disseminates no

information, and views itself as "neutral." Strickland Dep. at 12:19-13:2 17:8-18:9, 28:19-29:9,

35:17-20, 37:10-38:10, and 63:12-16. Provident maintains the entire administrative apparatus

for the policy. Strickland Dep. at 35:17-20; Dinsmore Dep. at 38:6-10.

## IV.     MOTION TO STRIKE INADMISSIBLE EVIDENCE

The Westovers request exclusion of the following inadmissible evidence offered in

support of Provident's Motion to Dismiss. Fed. R. Civ. P. 56(c)(4). First, Exhibit G to

THE WESTOVERS' OPPOSITION TO
PROVDIENT'S MOTION TO DISMISS
STATE LAW CLAIMS BASED ON ERISA
PREEMPTION; MOTION TO STRIKE AND
ALTERNATIVE REQUEST FOR
DISCOVERY PURSUANT TO FED. R. CIV.
P. 56(D)
(No. 3:20-cv-05931-BHS) - 6

**RUIZ & SMART PLLC**
1200 Fifth Ave., Ste. 1220
Seattle, WA 98101
Tel. 206-203-9100 Fax 206-785-1702

Dinsmore's declaration is an email written by Provident employee Brent Begley, who is not a witness, to other employees not including Dinsmore, who does not explain her personal knowledge of the email. Dkt. No. 36-7. The email is unauthenticated hearsay. Fed. R. Evid. 801, 802 and 901.

Second, Paragraphs 4-7 of Dinsmore's declaration testify about discussions between D.R. Horton and Provident about the specific policy benefits and terms. Dkt. No. 36, ¶¶ 4 and 7. This testimony is inadmissible because Dinsmore admitted at her deposition that she lacks personal knowledge of any discussions between D.R. Horton and Provident. Dinsmore Dep. at 9:13-10:17; Fed. R. Civ. P. 56(c)(4); *Skillsky v. Lucky Stores, Inc.*, 893 F.2d 1088, 1091 (9th Cir. 1990).

Third, Dinsmore Declaration Exhibits A, B, C, D, F, and G, and Deuink Declaration Exhibit A, should be excluded because these documents were not timely disclosed in discovery. Dkt. No. 34, ¶ 6; Dkt. No. 36 at ¶8; Dkt. No. 3; Dkt. No. 36, ¶ 5(c); Dkt. No. 36-2; Dkt. No. 36-1; Dkt. No. 36-3; Fed. R. Civ. P. 37(c); Dkt. No. 48 at 2. Finally, the entire declaration of Bill Deuink should be excluded because he was never identified as a witness in Provident's initial disclosures or discovery responses. Dkt. No. 34; Fed. R. Civ. P. 37(c); Dkt. No. 48 at 2.

## V.   ARGUMENT

### A.   The Court should treat Provident's motion as a motion for summary judgment.

The Court should construe Provident's Motion to Dismiss as a motion for summary judgment under Fed. R. Civ. P. 56(e) because the motion relies on evidence outside the pleadings. *Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1207 (9th Cir. 2007).

THE WESTOVERS' OPPOSITION TO
PROVDIENT'S MOTION TO DISMISS
STATE LAW CLAIMS BASED ON ERISA
PREEMPTION; MOTION TO STRIKE AND
ALTERNATIVE REQUEST FOR
DISCOVERY PURSUANT TO FED. R. CIV.
P. 56(D)
(No. 3:20-cv-05931-BHS) - 7

**RUIZ & SMART PLLC**
1200 Fifth Ave., Ste. 1220
Seattle, WA 98101
Tel. 206-203-9100 Fax 206-785-1702

Provident is entitled to summary judgment only if it can show that "there is no genuine issue as to any material fact." Fed. R. Civ. P 56(c). Evidence must be viewed "in the light most favorable to the nonmoving party" and "all justifiable inferences" must be drawn in favor of the nonmoving party. *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 772 (9th Cir. 2002) (citing *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992) and *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir.1987)).

**A.**     **Provident fails to meet its burden to show the policy was issued through an employee benefit plan.**

**1.**     **ERISA preempts state laws regarding benefit "plans"—not merely benefits.**

Provident's assumption that ERISA governs any benefit that an employee receives by virtue of their employment is central to its preemption defense but incompatible with Congress' intent in enacting ERISA. Congress' intent is the touchstone of ERISA preemption. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 45, 107 S. Ct. 1549, 1552, 95 L. Ed. 2d 39 (1987) (citing *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 208, 105 S.Ct. 1904, 1909, 85 L.Ed.2d 206 (1985)). Congress intended that ERISA govern "benefit plans," rather than simply "benefits". *Golden Gate Rest. Ass'n v. City & Cty. of San Francisco*, 546 F.3d 639, 649 (9th Cir. 2008) (citing 29 U.S.C. §§ 1144(a), 1133(a), and 1002(1) and *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 16, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987)).

This distinction was dispositive in *Fort Halifax*, where the U.S. Supreme Court determined that ERISA did not preempt a Maine law requiring employers to pay their workers

THE WESTOVERS' OPPOSITION TO PROVDIENT'S MOTION TO DISMISS STATE LAW CLAIMS BASED ON ERISA PREEMPTION; MOTION TO STRIKE AND ALTERNATIVE REQUEST FOR DISCOVERY PURSUANT TO FED. R. CIV. P. 56(D)
(No. 3:20-cv-05931-BHS) - 8

**Ruiz & Smart PLLC**
1200 Fifth Ave., Ste. 1220
Seattle, WA 98101
Tel. 206-203-9100 Fax 206-785-1702

specific benefits. 482 U.S. at 4. The employers protested that the Maine law compelled them to pay the very benefits identified in ERISA. *Id*. at 7 (citing 29 U.S.C. § 1002(1)(B)). The Supreme Court explained this objection misunderstood ERISA, which "does not refer to state laws relating to 'employee benefits,' but to state laws relating to 'employee benefit plans'". *Id*.

This distinction, the Supreme Court explained, flows from Congress' intent in enacting ERISA. *Id*. Congress wanted to protect the employees from the risk of mismanagement or malfeasance presented by the employer's involvement in the benefits' administration, while encouraging employers to offer benefit plans by insulating the administrative functions involved in operating such plans from burdensome multistate regulation. *Id*. at 11–12. The Maine law required employers to perform none of these functions, such as determining eligibility, calculating benefit levels, making disbursements, monitoring the availability of funds, or keeping records. *Id*. at 9 and 11-12. Accordingly, the law required no employee benefit "plan" and did not offend ERISA. *Id*. at 12.

> **2.     Provident offers no admissible evidence that the policy is part of D.R. Horton's ERISA plan.**

The test for whether the Provident policy is part of D.R. Horton's ERISA plan is whether the policy and plan are "administered as a unit." *du Mortier v. Massachusetts Gen. Life Ins. Co*., 805 F. Supp. 816, 819 (C.D. Cal. 1992) (citing *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983)). Provident asserts the policy is part of D.R. Horton's ERISA plan under *Cox ex rel. Cox v. Reliance Standard Life Ins. Co.*, 1:13-CV-00104 AWI, 2013 WL 2156546, at *1 (E.D. Cal. May 17, 2013). *Cox* applied the *Shaw/du Mortier* test. *Id*. at *5-6

THE WESTOVERS' OPPOSITION TO
PROVDIENT'S MOTION TO DISMISS
STATE LAW CLAIMS BASED ON ERISA
PREEMPTION; MOTION TO STRIKE AND
ALTERNATIVE REQUEST FOR
DISCOVERY PURSUANT TO FED. R. CIV.
P. 56(D)
(No. 3:20-cv-05931-BHS) - 9

**RUIZ & SMART PLLC**
1200 Fifth Ave., Ste. 1220
Seattle, WA 98101
Tel. 206-203-9100 Fax 206-785-1702

(citing *Shaw*, 463 U.S. 85 and *du Mortier*, 805 F.Supp. at 819) (other citations omitted).[1] The

Court should apply this test in determining whether the Provident policy is part of D.R. Horton's

employee benefit plan.

Applying this test shows the policy is not part of D.R. Horton's ERISA plan because

they were administered separately:

1.  All D.R. Horton ERISA Plan documents—including Form 5500[2]—omit

    Provident and its individual disability policies. Strickland Dep. at 21:23-24:10,

    24:11-26:19, and 27:5-28:9; Dkt. No. 41-6, 41-5, and 41-4.

2.  Employees were told that the Provident policy "does not coordinate with" the

    D.R. Horton Plan benefits, that claims decisions under the policy are "rendered

    independent" of the D.R. Horton Plan benefits, and that any statements Provident

    made in comparing its policy to the D.R. Horton Plan benefits were purely

    illustrative. Dkt. No. 41-10 at DR HORTON_000483.

3.  D.R. Horton segregated the Provident policy from the enrollment meetings and

    other communications regarding its ERISA plan. Strickland Dep. at 27:5-29:25

    and 30:6-13; Westover Dec., ¶¶ 4-12; Dkt. No. 41-7.

---

[1] None of Provident's string-cite of other cases considered the *Shaw* joint administration test, and all involved different facts where the employer paid the insurance premiums, coverage was not voluntary, or the benefit in question was identified in the employer's Form 5500. *Postma v. Paul Revere Life Ins. Co.*, 223 F.3d 533, 535 (7th Cir. 2000); *Gaylor v. John Hancock Mut. Life Ins. Co.*, 112 F.3d 460, 463 (10th Cir. 1997); *Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 601 (6th Cir. 2007).

[2] While not solely dispositive, D.R. Horton's decision to omit the Provident policy from its ERISA Plan's Form 5500 is highly probative evidence that the policy is separate from the ERISA plan. *Nosrati v. Provident Life & Accident Ins. Co.*, 383 F. Supp. 3d 990, 995 (C.D. Cal. 2019) (citing *Scott v. Gulf Oil Corp.*, 754 F.2d 1499, 1503 (9th Cir. 1985) and *Du Mortier*, 805 F.Supp. at 820)).

THE WESTOVERS' OPPOSITION TO
PROVDIENT'S MOTION TO DISMISS
STATE LAW CLAIMS BASED ON ERISA
PREEMPTION; MOTION TO STRIKE AND
ALTERNATIVE REQUEST FOR
DISCOVERY PURSUANT TO FED. R. CIV.
P. 56(D)
(No. 3:20-cv-05931-BHS) - 10

**RUIZ & SMART PLLC**
1200 Fifth Ave., Ste. 1220
Seattle, WA 98101
Tel. 206-203-9100 Fax 206-785-1702

1

2

3

4

5

6

    4.      D.R. Horton is the Plan Administrator for its ERISA Plan with authority to control and manage the operation of its Plan, while Provident performs all the administrative functions for its individual disability policies without D.R. Horton's involvement. Dkt. No. 41-5 at WESTOVER_001224; Strickland Dep. at 12:19-13:2; 17:21-20:11; 21:3-21; 34:13-35:20; 37:10-38:16; Dinsmore Dep. at 58:18-59:22; 79:11-19; 85:14-88:15.

7

8

9

10

11

12

13

14

15

16

This evidence was absent from *Cox*, which concerned a supplemental life insurance benefit issued through the same group life insurance policy that was part of the employer's ERISA plan. 2013 WL 2156546, at *2. *Cox* emphasized a lack of evidence of different ERISA designations, documentation, and administration for the two benefits—the same evidence that is present here. *Id.* at *7. Unum's reliance on *Bender v. Unum Grp.* is similarly inapposite; there, the individual policy (which was partly funded by the employer) was issued by the same insurer as the group policy included in the employer's ERISA plan as a "reverse combo option" and the employer paid the premiums for some employees. 16-CV-03990-PJH, 2016 WL 5420156, at *3-4 (N.D. Cal. Sept. 28, 2016).

17

18

19

20

21

22

23

The only evidence Provident proffers of joint administration is Dinsmore's testimony that the Provident policy's elimination period was designed around the D.R. Horton group policy. Motion to Dismiss at 12:2-4 (citing Dinsmore Dec., Dkt. No. 36, at ¶ 4). This evidence is inadmissible. *Supra*, pp. 6-7. Regardless, this testimony is a far cry from the evidence in *Cox* and *Bender*. Dinsmore does not claim that D.R. Horton was involved in Provident's decision to design the elimination period in this fashion, and D.R. Horton has testified it had no such

24

25

THE WESTOVERS' OPPOSITION TO
PROVDIENT'S MOTION TO DISMISS
STATE LAW CLAIMS BASED ON ERISA
PREEMPTION; MOTION TO STRIKE AND
ALTERNATIVE REQUEST FOR
DISCOVERY PURSUANT TO FED. R. CIV.
P. 56(D)
(No. 3:20-cv-05931-BHS) - 11

**RUIZ & SMART PLLC**
1200 Fifth Ave., Ste. 1220
Seattle, WA 98101
Tel. 206-203-9100 Fax 206-785-1702

1   involvement. Strickland Dep. at 13:11-22 and 14:18-22. Provident's unilateral design of the

2   benefit without D.R. Horton's involvement is consistent with the evidence that D.R. Horton

3   segregated the Provident policy from its ERISA Plan.

4

5        **3.**     **Provident fails to show that the policy contains ERISA's administrative and formal requisites.**

6             **a.**     **D.R. Horton maintains no administrative scheme for handling the policy benefits.**

7

8          Contrary to Provident's supposition, the bare purchase of insurance—even if funded by

9   the employer, which is not the case here—does not itself establish an ERISA plan. *Kanne v.*

10  *Connecticut Gen. Life Ins. Co.*, 867 F.2d 489, 492 (9th Cir. 1988). "Even where an employer

11  actually purchases an insurance policy, or makes payments directly, there may not be a 'plan'

12  for ERISA purposes." *New England Mut. Life Ins. Co., Inc. v. Baig*, 166 F.3d 1, 4–5 (1st Cir.

13  1999) (quoting district court with approval). Rather, the Ninth Circuit requires that an insurance

14  policy satisfy ERISA's statutory definition of employee benefit plan to create an ERISA plan.

15  *Kanne v. Connecticut Gen. Life Ins. Co.*, 867 F.2d 489, 491 (9th Cir. 1988) (citing 29 U.S.C. §

16  1002(1)). The U.S. Supreme Court interpreted that statutory definition to require an employer's

17  ongoing administrative scheme as an essential element of an employee benefit plan. *Pegram v.*

18  *Herdrich*, 530 U.S. 211, 222–23, 120 S. Ct. 2143, 2151, 147 L. Ed. 2d 164 (2000) (citations

19  omitted); *Fort Halifax*, 482 U.S. at 9-12.

20         The Ninth Circuit describes this requisite as demanding proof of a scheme in which the

21  employer applies specific criteria to each employee's individual circumstances on a case-by-

22  case basis to determine benefit entitlement. *Bogue v. Ampex Corp.*, 976 F.2d 1319, 1323 (9th

23

24  THE WESTOVERS' OPPOSITION TO
    PROVDIENT'S MOTION TO DISMISS
25  STATE LAW CLAIMS BASED ON ERISA
    PREEMPTION; MOTION TO STRIKE AND
    ALTERNATIVE REQUEST FOR
    DISCOVERY PURSUANT TO FED. R. CIV.
    P. 56(D)
    (No. 3:20-cv-05931-BHS) - 12

**RUIZ & SMART PLLC**
1200 Fifth Ave., Ste. 1220
Seattle, WA 98101
Tel. 206-203-9100 Fax 206-785-1702

Cir. 1992) (citing *Fontenot v. NL Indus., Inc.*, 953 F.2d 960, 962–63 (5th Cir. 1992)). The key is whether there is "ongoing, particularized, administrative discretionary analysis" by the employer. *Velarde v. PACE Membership Warehouse, Inc.*, 105 F.3d 1313, 1317 (9th Cir. 1997) (citing *Bogue v. Ampex Corp.*, 976 F.2d 1319, 1323 (9th Cir. 1992)).

Such proof is absent here. D.R. Horton has no discretion to investigate claims, interpret the policy, cancel the policy, or compel Provident to pay benefits. Strickland Dep. at 17:8-18:16, 37:10-38:16. D.R. Horton makes no annual reports, provides no policy updates, and disburses no information about the terms of the policy. *Id*. at 12:19-13:2, 23:2-4, 25:3-19, and 28:11-29:9; Dkt. No. 41-2, 41-4, 41-5, 41-6. D.R. Horton handles no funds; the employees pay the premiums to Provident and Provident pays the benefits to the employees. Strickland Dep. at 17:16-19, 38:14-16, and 44:12-45:4.

Provident's sole evidence of D.R. Horton's ongoing administrative involvement is an email referencing a putative agreement to tell Unum when an employee is on disability leave. Dinsmore Dec. Ex. G. This is inadmissible for the reasons stated above. *Supra*, pp. 6-7. But it is insufficient even if admissible. Cases finding an employer's administrative scheme rely on less flimsy evidence: the employer's explicit identity as plan administrator, drafting a summary plan description, responsibility for the benefit's day-to-day operations, discretion to determine benefits payable, or serving as agent for service of process for disputes about the benefit. *Zucker v. Liberty Life Assurance Co. of Boston*, CV-10-5128-LRS, 2011 WL 13228447, at *3 (E.D. Wash. Jan. 19, 2011); *Shaw v. Prudential Ins. Co. of Am.*, 10-3355-S-CV-DGK, 2012 WL 432874, at *4 (W.D. Mo. Feb. 9, 2012).

THE WESTOVERS' OPPOSITION TO
PROVDIENT'S MOTION TO DISMISS
STATE LAW CLAIMS BASED ON ERISA
PREEMPTION; MOTION TO STRIKE AND
ALTERNATIVE REQUEST FOR
DISCOVERY PURSUANT TO FED. R. CIV.
P. 56(D)
(No. 3:20-cv-05931-BHS) - 13

**RUIZ & SMART PLLC**
1200 Fifth Ave., Ste. 1220
Seattle, WA 98101
Tel. 206-203-9100 Fax 206-785-1702

Courts in this Circuit and nationwide have repeatedly found this limited employer administration insufficient to create an ERISA plan. The District of Oregon determined an employee's retirement benefits were not an ERISA plan because the employer conducted no "ongoing, discretionary administrative analysis". *Barrett v. Waldbauer*, 32 F. Supp. 2d 1222, 1224 (D. Or. 1998) (citing *Delaye*, 39 F.3d at 237). The First Circuit Court of Appeals found no ERISA plan was created by the employer's payment of premiums for an employee's disability insurance because the employer's administrative involvement was limited. *Baig*, 166 F.3d at 5.

### b.     The policy lacks the formalities ERISA requires.

An insurance policy "may" establish an ERISA plan, as Provident correctly observes. *Cinelli v. Sec. Pac. Corp.*, 61 F.3d 1437, 1441 (9th Cir. 1995) (citing *Musto v. American General Corp.*, 861 F.2d 897, 900–01 (6th Cir.1988), *cert. denied*, 490 U.S. 1020, 109 S.Ct. 1745, 104 L.Ed.2d 182 (1989)). But, like any document establishing an ERISA plan, it must include certain minimal statutory formalities. 29 U.S.C. § 1102; *Watkins v. Westinghouse Hanford Co.*, 12 F.3d 1517, 1523 and n.1 (9th Cir. 1993), *as amended on denial of reh'g* (Mar. 22, 1994).

In *Watkins*, the Ninth Circuit held that the failure to include these formalities precluded establishing an ERISA plan. 12 F.3d at 1523. There, a former Hanford Nuclear Reservation employee argued that letters from Westinghouse Hanford Company regarding employees' retirement benefits created an ERISA plan. *Id*. The Ninth Circuit disagreed because the letters lacked the necessary formalities. *Id*. (citing 29 U.S.C. § 1102(a)(1).

THE WESTOVERS' OPPOSITION TO
PROVDIENT'S MOTION TO DISMISS
STATE LAW CLAIMS BASED ON ERISA
PREEMPTION; MOTION TO STRIKE AND
ALTERNATIVE REQUEST FOR
DISCOVERY PURSUANT TO FED. R. CIV.
P. 56(D)
(No. 3:20-cv-05931-BHS) - 14

**RUIZ & SMART PLLC**
1200 Fifth Ave., Ste. 1220
Seattle, WA 98101
Tel. 206-203-9100 Fax 206-785-1702

The Provident policy similarly lacks these formalities: it identifies no named fiduciary, amendment procedure, or persons with authority to amend the putative plan. 29 U.S.C. § 1102 (a)(1) and (b)(3). *Compare* Dkt. No. 41-9 (identifying no fiduciary or amendment procedure) *with* Dkt. No. 41-4 at WESTOVER_001376 (identifying D.R. Horton as the named fiduciary of its ERISA Plan) and WESTOVER_001364 (describing procedure for D.R. Horton to amend its ERISA Plan).

*Cinelli* does not compel the Court to overlook this absence. The group policy found to establish an ERISA plan in *Cinelli* contained the amendment language that is absent from the Provident policy. 61 F.3d at 1440 ("The policy between Aetna and Security Pacific provided that Security Pacific could terminate the policy at any time and that coverage would terminate upon discontinuance of the policy"). The District Court had explicitly found that "the insurance policy meets all the requirements of section 1102(b)." *Cinelli v. Sec. Pac. Corp. Supplemental Grp. Life Ins. Plan*, C 93-0450 TEH, 1993 WL 795226, at *5 (N.D. Cal. Nov. 22, 1993), *aff'd sub nom.* 61 F.3d 1437. The Ninth Circuit therefore distinguished that policy from the documents in *Watkins* that were found not to create an ERISA plan because they lacked the requisite formalities under 29 U.S.C. §1102. *Cinelli*, 61 F.3d at 1442 (citing *Watkins*, 12 F.3d at 1523).

**B.   Provident fails to overcome the "safe harbor" even had it proven that the policy was issued through an employee benefit plan.**

The Court can deny Provident's motion without analyzing the safe harbor elements because Provident fails to show the policy was issued through an ERISA plan as explained

THE WESTOVERS' OPPOSITION TO
PROVDIENT'S MOTION TO DISMISS
STATE LAW CLAIMS BASED ON ERISA
PREEMPTION; MOTION TO STRIKE AND
ALTERNATIVE REQUEST FOR
DISCOVERY PURSUANT TO FED. R. CIV.
P. 56(D)
(No. 3:20-cv-05931-BHS) - 15

**Ruiz & Smart PLLC**
1200 Fifth Ave., Ste. 1220
Seattle, WA 98101
Tel. 206-203-9100 Fax 206-785-1702

above. But even had Provident met that burden, the policy is still not governed by ERISA if it

falls within ERISA's safe harbor. *Zavora*, 145 F.3d at 1120-21 (citing 29 C.F.R. § 2510.3–1(j)).

The safe harbor's purpose is to allow an employer to "assist its work force by arranging for the

provision of desirable coverage at attractive rates" without "the trouble and expense that

meeting ERISA's requirements entails." *Johnson v. Watts Regulator Co.*, 63 F.3d 1129, 1133

(1st Cir. 1995).

      In the Ninth Circuit, the burden is on the party asserting the existence of an ERISA plan

to proffer evidence overcoming the safe harbor. *Galloway v. Lincoln Nat. Life Ins. Co.*, C09-

1479JLR, 2010 WL 2679894, at *3 (W.D. Wash. July 2, 2010) (citing *Zavora v. Paul Revere*

*Life Ins. Co.*, 145 F.3d 1118, 1119 n. 2 (9th Cir.1998)). Provident's motion challenges only two

safe harbor elements: "contribution" and "endorsement." Motion to Dismiss at 13:3-7. Provident

fails to defeat either element.

**1.      Provident's routine premium discount was not D.R. Horton's contribution.**

      Provident's contention that D.R. Horton made a "contribution" to the Provident policy

premiums because the employees who paid the premiums received a discount is incorrect. D.R.

Horton did not provide the discount—Provident did. D.R. Horton's Fed. R. Civ. P. 30(b)(6)

designee testified Provident determined the discount with no negotiation or input from D.R.

Horton:

    Q.     Who decided that the discount would be 25 percent?

    A.     Unum.

    Q.     And were there any kind of negotiations about that?

THE WESTOVERS' OPPOSITION TO
PROVDIENT'S MOTION TO DISMISS
STATE LAW CLAIMS BASED ON ERISA
PREEMPTION; MOTION TO STRIKE AND
ALTERNATIVE REQUEST FOR
DISCOVERY PURSUANT TO FED. R. CIV.
P. 56(D)
(No. 3:20-cv-05931-BHS) - 16

**RUIZ & SMART PLLC**
1200 Fifth Ave., Ste. 1220
Seattle, WA 98101
Tel. 206-203-9100 Fax 206-785-1702

1          A.      No.

2    Strickland Dep. at 50:8-13.

3          Provident's Fed. R. Civ. P. 30(b)(6) designee testified that Provident offers the exact

4    same discount any time this sort of "group type" insurance is sold to multiple employees.

5    Dinsmore Dep. at 25:6-25. Provident cites no evidence for its contention that D.R. Horton

6    negotiated the discount. Motion to Dismiss at 14:6-8. Provident's reliance on cases that treated a

7    discount procured by the employer as a type of constructive payment of premiums is therefore

8    inapposite. *See Bommarito v. Nw. Mut. Life Ins. Co.*, 2:15-CV-1187 WBS DB, 2018 WL

9    3537118, at *4 (E.D. Cal. July 23, 2018) (observing the employer "facilitate[ed]" the discount);

10   *Harding v. Provident Life & Acc. Ins. Co.*, 809 F. Supp. 2d 403, 408 (W.D. Pa. 2011) (discount

11   was provided in consideration for the employer's entry into a Salary Allotment agreement); *Zide

12   v. Provident Life & Acc. Ins. Co.*, SACV 10-00393-JVS, 2011 WL 12566818, at *2 (C.D. Cal.

13   Apr. 13, 2011) (same).

14

15         Rather, courts recognize that this unilateral discount is not a "contribution" under the

16   safe harbor. In a well-reasoned opinion, the federal court in *Gooden v. Unum Life Ins. Co. of

17   Am.* collected and analyzed decisions nationwide and determined that non-negotiated discounts

18   are not employer contributions. 181 F. Supp. 3d 465, 471-75 (E.D. Tenn. 2016) (collecting

19   cases). The *Gooden* decision emphasizes that reading a discount as a contribution would render

20   the safe harbor nonsensical because employers are already allowed to serve as premium

21   conduits under the safe harbor:

22              It is also not unusual for an insurer to offer some type of discount to a group,
23              regardless of whether that group involves ERISA. There is no reason why the

24   THE WESTOVERS' OPPOSITION TO
PROVDIENT'S MOTION TO DISMISS
25   STATE LAW CLAIMS BASED ON ERISA
PREEMPTION; MOTION TO STRIKE AND
ALTERNATIVE REQUEST FOR
DISCOVERY PURSUANT TO FED. R. CIV.
P. 56(D)
(No. 3:20-cv-05931-BHS) - 17

**RUIZ & SMART PLLC**
1200 Fifth Ave., Ste. 1220
Seattle, WA 98101
Tel. 206-203-9100 Fax 206-785-1702

combination of two permissible actions—payroll deduction by the employer and
a group discount from the insurer—would remove an insurance policy from the
safe harbor. To hold otherwise would be to present an employer who did not
wish to be drawn into ERISA with a nonsensical choice: either refuse to allow its
employees to use payroll deductions for insurance premiums (which is
specifically allowed under the safe harbor), or refuse to allow the insurer to offer
its employees a premium discount (which would risk involving the employer in
negotiating the terms of the policy, thereby potentially endorsing the plan under
the third criterion of the safe harbor).

181 F. Supp. 3d at 475 (internal citations omitted). Other cases echo this reasoning. *See, e.g.,*

*Letner v. Unum Life Ins. Co. of Am.*, 203 F. Supp. 2d 1291, 1300–01 (N.D. Fla. 2001)

(collecting cases) ("It is highly improbable that *de minimus* and indirect contributions would

resolve the issue of ERISA jurisdiction") (quotation omitted); *Turner v. Liberty Nat. Life Ins.*

*Co.*, 1:11-CV-270, 2012 WL 711357, at *4 (E.D. Tenn. Mar. 5, 2012) (collecting cases)

(explaining most courts have given "contribution" its plain meaning: an "actual contribution in

the form of a partial (or full) payment of premiums.").

These authorities are consistent with ERISA's purpose and structure in three respects.

First, interpreting a discount as a constructive "contribution" would allow employer conduct not

intended to be governed by ERISA to destroy the safe harbor. *McCann v. Unum Provident* and

Provident's other authorities reason that a discount is an employer contribution "because

employees who receive such group discounts receive a benefit that they could not otherwise

receive as individuals…" 921 F. Supp. 2d 353, 366 (D.N.J. 2013), *aff'd on other grounds*, 907

F.3d 130 (3d Cir. 2018).[3] But Congress enacted ERISA to govern benefit "plans," not to

---

[3] *McCann* was affirmed in part on other grounds, without discussion of its "contribution" reasoning.
*McCann v. Unum Provident*, 907 F.3d 130, 147 (3d Cir. 2018).

THE WESTOVERS' OPPOSITION TO
PROVDIENT'S MOTION TO DISMISS
STATE LAW CLAIMS BASED ON ERISA
PREEMPTION; MOTION TO STRIKE AND
ALTERNATIVE REQUEST FOR
DISCOVERY PURSUANT TO FED. R. CIV.
P. 56(D)
(No. 3:20-cv-05931-BHS) - 18

**RUIZ & SMART PLLC**
1200 Fifth Ave., Ste. 1220
Seattle, WA 98101
Tel. 206-203-9100 Fax 206-785-1702

regulate any benefits employees receive by virtue of their employment. *Fort Halifax*, 482 U.S. 1, 8, 107 S. Ct. 2211, 2216, 96 L. Ed. 2d 1 (1987) ("Given the basic difference between a "benefit" and a "plan," Congress' choice of language is significant in its pre-emption of only the latter.").

Second, a premium discount does not implicate Congress' concerns in enacting ERISA. Congress wants ERISA to insulate employers from burdensome multi-state regulation. *Fort Halifax*, 482 U.S. at 9. But unlike where an employer funds premiums directly, an insurer's premium discount involves no employer conduct vulnerable to state-law regulatory hassles. Nor is Congress' concern with protecting employees, *id.*, implicated by an insurer discount. An employer has no capacity for mismanagement or malfeasance with respect to an insurer's unilateral discount. *See, e.g., Schwartz v. Provident Life & Acc. Ins. Co.*, 280 F. Supp. 2d 937, 941 (D. Ariz. 2003) (explaining the dispositive question under the "contribution" element of the safe harbor is whether the employer "actually absorbed any portion of the cost of those premiums").

Third, conflating premium discounts with the employer's funding of benefits creates absurd results. Insurers offer premium discounts routinely. Dinsmore Dep. at 25:6-25; *Gooden*, 181 F. Supp. 3d 465, 471-75. If this discount defeated the safe harbor, an employer desiring to avoid creating an ERISA plan would have had to demand that the insurer depart from its normal practice and increase the premiums. No employer should have to demand that its employees pay more money as the price of remaining within the safe harbor. Indeed, the safe harbor's very purpose is to allow employers to offer their workers "desirable coverage at attractive rates"

THE WESTOVERS' OPPOSITION TO
PROVDIENT'S MOTION TO DISMISS
STATE LAW CLAIMS BASED ON ERISA
PREEMPTION; MOTION TO STRIKE AND
ALTERNATIVE REQUEST FOR
DISCOVERY PURSUANT TO FED. R. CIV.
P. 56(D)
(No. 3:20-cv-05931-BHS) - 19

**RUIZ & SMART PLLC**
1200 Fifth Ave., Ste. 1220
Seattle, WA 98101
Tel. 206-203-9100 Fax 206-785-1702

without "the trouble and expense that meeting ERISA's requirements entails." *Johnson*, 63 F.3d at 1133.

### 2. D.R. Horton's ministerial conduct does not rise to the level of endorsement.

Endorsement requires proof that an objectively reasonable employee would believe that D.R. Horton compromised its neutrality regarding the policy and held the policy out as part and parcel of its ERISA plan. *Johnson*, 63 F.3d at 1135. The Ninth Circuit Court of Appeals relies on *Johnson* when applying the safe harbor. *Zavora*, 145 F.3d at 1122 (citing *Johnson*, 63 F.3d at 1136); *Stuart v. UNUM Life Ins. Co. of Am.*, 217 F.3d 1145, 1153 (9th Cir. 2000) (citing *Johnson*, 63 F.3d at 1133, other citations omitted). And Provident embraces this standard by replying on cases employing the *Johnson* test. Motion to Dismiss at 13 (citing *Pierson v. Cont'l Cas. Co.*, CV 99-08862 MMM RCX, 2000 WL 1879895, at *6 (C.D. Cal. Dec. 8, 2000) and *Johnson v. Watts Regulator Co.*, 63 F.3d 1129, 1135 (1st Cir.1995)).

The facts here fail to meet that standard for the same reasons that led the First Circuit to find no endorsement in *Johnson*. 63 F.3d at 1131 and 1135-6. There, as here, the insurer drafted the policy and set premium rates. *Id*. at 1135; Dinsmore Dep. at 17:19-18-6; Strickland Dep. at 13:11-22, 14:18-15:12 and 50:8-13. The employer helped the insurer publicize the program by distributing materials prepared by the insurer to its employees—just like D.R. Horton. *Johnson* at 1135-36; Strickland Dep. at 30:14-31:11. As in this case, the enrollment materials in *Johnson* gave employees the choice whether to enroll, never suggested the employer controlled the policy, and never mentioned ERISA. *Johnson* at 1136; Dkt. No. 41-10; Westover Dec., ¶¶ 7-12; Strickland Dep. at 28:2-29:9; 29:19-25, 30:6-13; Dkt. No. 41-10. There, as here, the employer

THE WESTOVERS' OPPOSITION TO
PROVDIENT'S MOTION TO DISMISS
STATE LAW CLAIMS BASED ON ERISA
PREEMPTION; MOTION TO STRIKE AND
ALTERNATIVE REQUEST FOR
DISCOVERY PURSUANT TO FED. R. CIV.
P. 56(D)
(No. 3:20-cv-05931-BHS) - 20

**RUIZ & SMART PLLC**
1200 Fifth Ave., Ste. 1220
Seattle, WA 98101
Tel. 206-203-9100 Fax 206-785-1702

merely deducted premiums from employees' paychecks and remitted them to the insurer. *Johnson* at 1136; Strickland Dep. at 35:7-16. The employer in *Johnson* even performed more substantial conduct in the promotion of the policy than D.R. Horton did here: it affirmatively recommended the insurance policy to employees and helped the insurer process claims. *Id*.

The testimony cited in Provident's brief does not reflect that D.R. Horton compromised its neutrality or made the Provident policy appear part and parcel of its ERISA Plan. Provident relies mostly on evidence that the broker's conduct in promoting the policy should be imputed to D.R. Horton. Motion to Dismiss at 13-14 (citing Strickland Dep at 30:14-31:6; Deuink Dec. at ¶6; Deuink Dec. Ex. B; Dinsmore Dec. ¶ 5). Most of this evidence is inadmissible as explained *supra*, pp. 6-7. But even if admissible, these are the same facts that led the First Circuit to find no endorsement in *Johnson*, where the employer's efforts to help promote the policy were more vigorous than those of D.R. Horton.

Next, Provident claims that D.R. Horton endorsed the policy by selecting the benefits. Motion to Dismiss at 13-14 (citing Dinsmore Dec. ¶ 7). This testimony is inadmissible, *supra*, pp. 6-7, but not material even if admissible. "When an employer performs such activities as…selecting the specific benefit to be made available to its employees, selecting the specific elimination period to be made available to its employees, it is not deemed as endorsing the Plan." *Ames v. Jefferson Pilot Fin. Co.*, 515 F. Supp. 2d 1050, 1057 (D. Ariz. 2007) (citing *Zavora*, 145 F.3d at 1121)). And the testimony that Provident unilaterally selected the benefit terms creates a factual dispute precluding summary judgment even if this testimony were material. Strickland Dep. at 13:11-22 and 14:18-15:12; Dinsmore Dep. at 21:20-25.

THE WESTOVERS' OPPOSITION TO
PROVDIENT'S MOTION TO DISMISS
STATE LAW CLAIMS BASED ON ERISA
PREEMPTION; MOTION TO STRIKE AND
ALTERNATIVE REQUEST FOR
DISCOVERY PURSUANT TO FED. R. CIV.
P. 56(D)
(No. 3:20-cv-05931-BHS) - 21

**RUIZ & SMART PLLC**
1200 Fifth Ave., Ste. 1220
Seattle, WA 98101
Tel. 206-203-9100 Fax 206-785-1702

Provident next relies on D.R. Horton's testimony that it "agreed to endorse" the policy, in response to questioning from Provident's counsel that provided no definition of the term "endorse." Motion to Dismiss at 13-14 (citing Strickland Dep at 61:2-7). But the same witness clarified that D.R. Horton did not perform the specific actions comprising endorsement under *Johnson*, i.e., telling employees that the policy is backed by D.R. Horton, abandoning its neutrality regarding the policy, or urging employees to purchase the policy. Strickland Dep. at 62:23-64:1; 63 F.3d at 1134. Indeed, the witness testified that D.R. Horton's only reason for involving itself in the policy's promotion was so that the employees did not think Provident's promotional materials were a random solicitation. *Id.* at 57:15-58:13.

Finally, Provident repackages its "discounts are contributions" argument to claim the discount constitutes endorsement. Motion to Dismiss at 13-14 (citing Strickland Dep. at 50:14-21). But non-negotiated discounts of the type at issue here do not rise to the level of employer endorsement. *Rubin v. Guardian Life Ins. Co. of Am.*, 174 F. Supp. 2d 1111, 1118 (D. Or. 2001).

Provident's authorities relied on more substantial evidence than this to find endorsement. In *Pierson v. Cont'l Cas. Co.*, the employees' union endorsed the insurance policy when it created a special committee to investigate the insurer, confirm its solvency, and confirm its compliance with specific criteria before giving the insurer the union's "seal of approval" in communications with employees. CV 99-08862 MMM RCX, 2000 WL 1879895, at *3 and *7 (C.D. Cal. Dec. 8, 2000). Similarly, the policy found to have been endorsed in *Bender* supplemented a group policy the employer had purchased from the same insurer and funded for its employees. 2016 WL 5420156, at *3-4. Equating this conduct with the actions of D.R Horton

THE WESTOVERS' OPPOSITION TO
PROVDIENT'S MOTION TO DISMISS
STATE LAW CLAIMS BASED ON ERISA
PREEMPTION; MOTION TO STRIKE AND
ALTERNATIVE REQUEST FOR
DISCOVERY PURSUANT TO FED. R. CIV.
P. 56(D)
(No. 3:20-cv-05931-BHS) - 22

**RUIZ & SMART PLLC**
1200 Fifth Ave., Ste. 1220
Seattle, WA 98101
Tel. 206-203-9100 Fax 206-785-1702

(who did everything but "build a moat" around the policy, *Johnson*, 63 F.3d at 1134), would require far more than the safe harbor demands of employers desiring to benefit their employees while avoiding ERISA's administrative burdens.

Rather, cases considering conduct closer to D.R. Horton's find no endorsement. In *Ames*, the federal court determined that the same conduct Provident cites here, coupled with far more substantial employer involvement than D.R. Horton performed, failed to rise to the level of endorsement. 515 F. Supp. 2d at 1056-59. There, the employer performed same actions as D.R. Horton did: selected the benefits to be offered and gave the insurer access to its employees to promote the policy. *Id*. The employer also did far more than D.R. Horton: required employees to attend meetings where the insurer's agents urged them to buy the policies, and requested that the insurer draft a Summary Plan Description for the policy that identified the employer as the plan administrator. *Id*. If compelling employees to attend meetings with the insurer's sales force is not endorsement, certainly nothing D.R. Horton has done rises to that level.

## VI.   ALTERNATIVE REQUEST FOR DISCOVERY UNDER RULE 56(D)

The foregoing demonstrates that the Court can deny Provident's motion and find the policy is not governed by ERISA without further discovery. The factual gaps regarding the broker's role in the policy's promotion, as well as D.R. Horton's agreements with the broker and Provident, do not prevent the Court from concluding that the policy is not governed by ERISA. But if the Court determines otherwise, it should allow the Westovers discovery into these facts. The Westovers were unable to conduct this discovery previously because Provident failed to disclose the documents and witness testimony relied on in its motion in its initial

THE WESTOVERS' OPPOSITION TO
PROVDIENT'S MOTION TO DISMISS
STATE LAW CLAIMS BASED ON ERISA
PREEMPTION; MOTION TO STRIKE AND
ALTERNATIVE REQUEST FOR
DISCOVERY PURSUANT TO FED. R. CIV.
P. 56(D)
(No. 3:20-cv-05931-BHS) - 23

disclosures, discovery responses, or during its Fed. R. Civ. P. 30(b)(6) deposition. *See* Declaration of McKean Evans re Alternative Request for Discovery Under Rule 56(d). *Employers Teamsters Local Nos. 175 & 505 Pension Tr. Fund v. Clorox Co.*, 353 F.3d 1125, 1129 (9th Cir. 2004) (citing *VISA Int'l Serv. Ass'n v. Bankcard Holders of Am.*, 784 F.2d 1472, 1475 (9th Cir.1986)).

## VII.    CONCLUSION

Even crediting the documents and testimony Provident failed to disclose in discovery, the evidence shows insufficient employer involvement to transform this individual insurance policy into an ERISA plan. Provident's arguments boil down to the correct but irrelevant observation that, when purchasing the policy, Westover received a benefit he would not have received absent his employment with D.R. Horton. This reflects a misunderstanding of ERISA, which requires proof of an employee benefit "plan"—not merely of an employee benefit. The Court should deny Provident's Motion to Dismiss and grant the Westovers' Motion for Summary Judgment.

Dated April 12, 2021.

**RUIZ & SMART PLLC**

By: */s McKean J. Evans*
McKean J. Evans, WSBA #52750

Isaac Ruiz, WSBA #35237
1200 Fifth Ave., Ste. 1220
Seattle, WA 98101
Tel. 206-203-9100
Fax. 206-785-1702
iruiz@plaintifflit.com

THE WESTOVERS' OPPOSITION TO
PROVDIENT'S MOTION TO DISMISS
STATE LAW CLAIMS BASED ON ERISA
PREEMPTION; MOTION TO STRIKE AND
ALTERNATIVE REQUEST FOR
DISCOVERY PURSUANT TO FED. R. CIV.
P. 56(D)
(No. 3:20-cv-05931-BHS) - 24

**RUIZ & SMART PLLC**
1200 Fifth Ave., Ste. 1220
Seattle, WA 98101
Tel. 206-203-9100 Fax 206-785-1702

1    mevans@plaintifflit.com

2    ***Counsel for Plaintiffs Randolff Scott Ruffell Westover and Andrea Westover***

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

THE WESTOVERS' OPPOSITION TO
PROVDIENT'S MOTION TO DISMISS
STATE LAW CLAIMS BASED ON ERISA
PREEMPTION; MOTION TO STRIKE AND
ALTERNATIVE REQUEST FOR
DISCOVERY PURSUANT TO FED. R. CIV.
P. 56(D)
(No. 3:20-cv-05931-BHS) - 25

RUIZ & SMART PLLC
1200 Fifth Ave., Ste. 1220
Seattle, WA 98101
Tel. 206-203-9100 Fax 206-785-1702