UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

RANDOLFF SCOTT RUFFELL WESTOVER and ANDREA WESTOVER, husband and wife, and the marital community composed thereof,

Plaintiffs,

v.

PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY,

Defendant.

CASE NO. C20-5931 BHS

ORDER

THIS MATTER is before the Court on the following motions: (1) Defendant Provident Life and Accident Insurance Company's Motion to Dismiss Plaintiff Randolff Westover's[1] state law claims, based on ERISA preemption, Dkt. 33; (2) Westover's responsive Motion for Summary Judgment seeking dismissal of Provident's ERISA[2] preemption affirmative defense, Dkt. 38; and (3) Westover's Motion for Federal Rule of

---

[1] The Plaintiffs are Randolff and Andrea Westover, husband and wife. This Order uses the singular "Westover" for clarity and ease of reference.

[2] "ERISA" is the commonly-used acronym for the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001–1461.

ORDER - 1

Civil Procedure 37(c) Sanctions, Dkt. 48, alleging that Provident's motion is based on witnesses and evidence not properly disclosed.

## I. BACKGROUND

Westover was employed as a mortgage underwriter at D.R. Horton. Dkt. 38 at 4. He participated in D.R. Horton's Long Term Disability Plan, issued by Life Insurance Company of North America, and offered to all D.R. Horton employees. *Id.* It is undisputed that this D.R. Horton employee Healthcare Plan is an ERISA plan, administered by D.R. Horton's insurance broker, IPS Advisors. *See, e.g.*, Dkt. 41-6 (ERISA-required Annual Report "Form 5500").

Sometime before 2018, D.R. Horton offered to certain highly-compensated employees a supplemental, voluntary Disability Income Protection Policy (the "Individual Disability Income" or "IDI" policy), issued by Provident. Dkt. 38 at 5. Provident had approached its long-time insurance Broker, Heinrich Financial Corporate Benefits ("HFCB"),[3] about selling the IDI policies to D.R. Horton and its employees. Dkt. 76-2, Deposition of James W. Deuink ("Deuink Dep.") at 37:4–38:14. D.R. Horton agreed and allowed HFCB to promote the voluntary IDI policy as a supplement to the

---

[3] The nature of HFCB's role in the sale and administration of the IDI plan is a major point of contention in each of these motions. Westover argues and appears to demonstrate that the HFCB witness upon which Provident relies, Bill Deuink, and the documents attached to his Declaration were not disclosed in Provident's initial disclosures and were sought but not disclosed in discovery. Dkt. 48 at 4. Westover disputes Provident's repeated characterization of HFCB as D.R. Horton's agent or broker and its claim that D.R. Horton "hired" HFCB. He appears to demonstrate that Provident hired HFCB to sell Provident policies to customers like D.R. Horton, as it had "hundreds" of times previously. This issue is addressed below.

1   "primary" disability protection D.R. Horton provided to all its employees under its

2   separately administered, existing "Group LTD" ERISA Plan. On D.R. Horton letterhead,

3   HFCB sent to select D.R. Horton employees like Westover an invitation to purchase a

4   Provident IDI policy. Westover's letter was sent April 25, 2018:

> Dear Randolff Westover,
>
> D.R. Horton is pleased to inform you that you can now protect more of your income should you experience a health crisis that prevents you from working. D.R. Horton provides a Group Long-Term Disability (LTD) plan that protects up to 60% of your compensation; however, benefits are taxable. Our newest voluntary benefit, called IDI, can help you focus more on your health and less on financial worries during your time away from work.
>
> Use the following customized analysis to help you:
> •Understand what coverage you currently have
> •Determine whether your current coverage is sufficient or if you should consider the Individual Disability Insurance (IDI) policy.
>
> Carefully review your options in this personalized kit and make your decision by May 11th. If you have any questions about your options, you may call a policy consultant at 1-800-258-8429 or email customerservice@hfcb.com.

Dkt. 34, Exhibit B, at 9.

Westover purchased an IDI policy on April 29, 2018. Dkt. 1, ¶ 8. In February 2019, Westover fell off a ladder and suffered a traumatic brain injury. *Id.* ¶ 14. By August 2019, his symptoms forced him to stop working. *Id.* ¶ 24. In April 2020, he sought benefits under his IDI policy. *Id.* ¶ 28. He alleges Provident did not decide his claim, or deny it, violating its duties under state law. *Id.* ¶¶ 33–37.

He sued in September 2020, alleging state law claims for breach of contract, breach of the duty of good faith, negligent claims handling, violation of the Washington

Consumer Protection Act ("CPA"), and violation of the Washington Insurance Fair Conduct Act ("IFCA"). *Id.* ¶¶ 43–90. He also asserts an "alternate" claim under ERISA, alleging that Provident's failure to provide him benefits is a violation of its duties under that statute. *Id.* ¶¶ 91–104.

Provident seeks dismissal of Westover's state law claims, arguing that Westover's IDI policy is by itself an ERISA plan and, even if it is not, that it is a part of D.R. Horton's ERISA plan. Dkt. 33. Provident claims that the IDI policy is governed solely by ERISA and that Westover's state law "bad faith" claims against it are preempted by ERISA. *Id.*

Westover seeks summary judgment on Provident's "preemption" affirmative defense, arguing that the IDI policy is not an ERISA plan as matter of law. Dkt. 38. He argues that D.R. Horton intentionally segregated the IDI policy from its existing ERISA plan and that that the IDI plan lacks essential administrative components of an employee benefit plan under ERISA. *Id.* He argues that in any event, the IDI policy falls within ERISA's "safe harbor," which permits an employer to escape the burdens of ERISA in some circumstances. *Id.*

Westover also asks the Court to strike some of the evidence upon which Provident's motion is based. Dkt. 54 at 6–7. He contends that Provident's motion (and its response to his motion) relies on the testimony of a witness it did not identify, Bill Deuink of HFCB, and documentary evidence attached to Deuink's Declaration, Dkt. 34, which was not produced. Dkt. 54 at 6–7. Westover asks the Court to strike the evidence

and award him attorneys' fees under Federal Rule of Civil Procedure 37(c)(1), based on Provident's failure to disclose this evidence. *Id.*; *see also* Dkt. 48.

Westover also asks the Court to strike the Declaration of Provident's Rule 30(b)(6) designee, Donna Dinsmore, Dkt. 36. Dkt. 54 at 7. Dinsmore testified about discussions between D.R. Horton and Provident, but in her deposition conceded she had no personal knowledge of those discussions. *See id.* (citing Dkt. 41-8, Dinsmore 30(b)(6) Deposition ("Dinsmore Dep.") at 9:13–10:17). Westover also seeks to strike as hearsay an email attached to Dinsmore's Declaration, Dkt. 36-7, from Provident employee Brent Begley to a group of D.R. Horton employees, and not sent to Dinsmore. Dkt. 54 at 6–7. The sealed version of the exhibit is Dkt. 39-7. Provident argues that Dinsmore is entitled to rely on hearsay as Provident's Rule 30(b)(6) designee. Dkt. 71 at 2–3.

After the parties filed their motions, Westover conducted additional discovery into HFCB and its role in the IDI policy. He contends he obtained documents from HFCB demonstrating that HFCB was Provident's sales agent, not D.R. Horton's agent and not an administrator of the IDI plan. Dkt. 94 at 2–3. He demonstrates that despite the claim that D.R. Horton "hired" HFCB, its commissions were paid by Provident, and D.R. Horton never paid anything to HFCB. *Id.* at 3.

Indeed, Westover contends that Deuink concedes that when he signed his Declaration, Dkt. 34, in March 2021, he "knew" that the Provident policies are not part of an ERISA plan." Dkt. 94 at 3 (citing Deuink Dep. at 40:18–23, 52:4–18; Evans Dec. Ex. N. (Dkt. 89)). In April 2020, when Westover first sought benefits, Deuink asked HFCB's

Vice President of Account Management, Leslie Morton, whether the Provident IDI policy was an ERISA plan. Morton responded in the negative:

> No, I don't think they deemed it ERISA.
> Unum[4] works a little different. The employer is not asked to confirm if it will or will not be ERISA. Unum will provide a 5500 if any employer requests.
> I dug through notes and emails and have nothing on this being ERISA. I've never been asked to get a 5500.

Dkt. 89 at 2. Westover also argues that HFCB's testimony confirms that the IDI plan was separate from D.R. Horton's ERISA plan (issued and administered by different entities), that D.R. Horton never "administered" the IDI plan, and that HFCB never had any role on any claims made under the IDI policy. Dkt. 94 at 4–5.

Provident responds that the subsequent discovery only bolsters its position, that the easy-to-meet ERISA standard has been met. Dkt. 95. It argues that the record amply demonstrates that D.R. Horton established, sponsored, and endorsed an IDI Plan for its high earning employees and that it "approved" of HFCB's conduct on its behalf. *Id.* at 2. Provident argues it is no longer disputed that D.R. Horton retained HFCB to handle enrollment and marketing of the IDI Plan and to communicate with D.R. Horton employees. *Id.* at 3–5. It emphasizes that D.R. Horton encouraged those employees to "call our plan administrator, HFCB, to fully understand your available coverage options." *Id.* at 4 (citing Dkt. 34, Exhibit B, at 14).

The issues are addressed in turn.

---

[4] Unum is Provident's parent company.

## II. DISCUSSION

**A.      Legal Standard**

Provident's Motion is styled as a "Motion to Dismiss," but it does not cite or rely on Federal Rule of Civil Procedure 12(b)(6) or any case construing it. Dkt. 33. Indeed, the motion is supported by declarations and documentary evidence, and the cases upon which it relies clearly require the Court to ascertain the nature of the IDI policy with reference to the facts and circumstances surrounding it. *See* Dkt. 33 at 7 (citing *Kanne v. Conn. Gen. Life Ins. Co.*, 867 F.2d 489, 492 (9th Cir. 1988) ("The existence of an ERISA plan is a question of fact, to be answered in light of all of the surrounding facts and circumstances from the point of view of a reasonable person.")).

Westover urges the Court to convert Provident's motion to one for summary judgment because it necessarily relies on matters outside the pleadings. Dkt. 54 at 7 (citing *Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1207 (9th Cir. 2007)). Provident's Reply does not address this argument but asserts that as a Rule 30(b)(6) designee, Dinsmore is permitted to provide evidence "in support of summary judgment." Dkt. 71 at 2.

The Court agrees that the resolution of the cross motions requires an evaluation of the facts and circumstances surrounding the IDI policy and will therefore convert Provident's motion to one for summary judgment. Both parties have submitted evidence and fully briefed the issue. No additional briefing is necessary. So construed, the motions are cross-motions for summary judgment on the issue of ERISA preemption.

Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is "no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether an issue of fact exists, the Court must view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). A genuine issue of material fact exists where there is sufficient evidence for a reasonable factfinder to find for the nonmoving party. *Anderson*, 477 U.S. at 248. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251–52. The moving party bears the initial burden of showing that there is no evidence which supports an element essential to the nonmovant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Once the movant has met this burden, the nonmoving party then must show that there is a genuine issue for trial. *Anderson*, 477 U.S. at 250. If the nonmoving party fails to establish the existence of a genuine issue of material fact, "the moving party is entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323–24. There is no requirement that the moving party negate elements of the non-movant's case. *Lujan v. National Wildlife Federation*, 497 U.S. 871 (1990). Once the moving party has met its burden, the non-movant must then produce concrete evidence, without merely relying on allegations in the pleadings, that there remain genuine factual issues. *Anderson*, 477 U.S. at 248.

**B. Motion to Strike and For Sanctions.**

As an initial matter, Westover has demonstrated that Provident did not identify Bill Deuink as a witness and did not disclose the documents attached to his Declaration, Dkt. 34, either in its initial disclosures or in response to Westover's discovery. Dkt. 48.

Provident's Response concedes that it did not produce the evidence and points to the Court's Order on Westover's prior motions for sanctions—which was granted, Dkt. 50—for the proposition that Westover's remedy was to depose Dinsmore a second time and to have additional time to address the ERISA preemption issue. Dkt. 52 at 1. It argues that the late disclosure of HFCB was justified because Westover had previously asserted that the IDI policy was an ERISA plan. *Id.* But that was before he filed suit. Westover's complaint alleges state law bad faith claims, Dkt. 1, and Provident's Answer asserted that Westover's state law claims were preempted by ERISA. Dkt. 6 at 8. It argues that Westover had "equal access" to HFCB and Deuink and that he had an opportunity to conduct discovery to obtain the information. Dkt. 52 at 7.

But the timing of the assertion of ERISA as a defense undermines Provident's claimed justification for withholding documents supporting (or undermining) that defense. And Westover did propound discovery about the ERISA issue, and the documents upon which Provident's position relies was not produced. The fact that (with the Court's assistance) Westover was able to cure any prejudice is not an excuse for failing to produce discoverable evidence in response to legitimate discovery requests. Provident was obligated to produce that evidence in its initial disclosures, and in response to discovery, and it admits that it did not.

1    In the interest of resolving these motions on the merits, and because the

2 undisclosed material is not enough to prevail, the Court will not strike the offending

3 material. This conclusion is bolstered by the fact that Westover has succeeded in

4 rebutting at least some of the documentary testimony in subsequent depositions.

5    The Motion for Sanctions, however, is well-taken. Provident has not adequately

6 explained why it failed to produce earlier the documents it found in time to support its

7 motion. Westover's Motion for Sanctions, Dkt. 48, is GRANTED, and Provident shall

8 pay Westover a reasonable fee for having to raise the issue in the first place. In an effort

9 to streamline the process, the Court will take judicial notice that the amount incurred was

10 more than $1500, which is the amount of the sanction, payable to Westover's attorney.

11 **C.     ERISA**

12   Provident argues that its IDI policy is an ERISA plan as a matter of law and that

13 Westover's state law CPA and IFCA "bad faith" claims against it are preempted. Dkt. 33.

14 Westover seeks summary judgment on Provident's ERISA preemption affirmative

15 defense, arguing that even viewed in the light most favorable to Provident, the IDI plan is

16 not an ERISA plan, and even if it might be it falls within ERISA's "safe harbor"—and

17 outside ERISA—as a matter of law. Dkt. 38.

18   The existence of an ERISA plan is a question of fact. *Kanne*, 867 F.2d at 492. The

19 insurer has the burden to show its plan qualifies as an ERISA plan by a preponderance of

20 the evidence. *Id*. at 492 n.4. The parties agree that the Court considers five factors to

21 determine whether ERISA applies. An ERISA plan requires (1) a plan, fund, or program

22 (2) established or maintained (3) by an employer (4) for the purpose of providing

disability benefits (5) to the participants or beneficiaries. *Id*. at 492 (citing 29 U.S.C. § 1002(1)). Only the first element is at issue.

### 1. The IDI Policy is not itself an ERISA Plan.

An ERISA plan must be established by a "written instrument," 29 U.S.C. § 1102(a)(1), which can be the insurance policy itself. *Cinelli v. Sec. Pac. Corp.*, 61 F.3d 1437, 1441 (9th Cir. 1995). However, ERISA requires that the written instrument "provide for one or more named fiduciaries who jointly or severally shall have the authority to control and manage the operation and administration of the plan," 29 U.S.C. § 1102(a)(1), and must have certain "requisite features" including a "procedure for amending such plan, and for identifying the persons who have authority to amend the plan," 29 U.S.C. § 1102(b)(3).

Westover argues that the IDI policy does not name any fiduciary and lacks the requisite features of providing a procedure for amending the plan. Dk. 38 at 16–17. He argues that there is no evidence supporting the conclusion that D.R. Horton has any "administrative scheme" with respect to the IDI policy; instead, its only role is deducting the premium from its employee's paychecks. *Id*. at 16 (citing *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 12 (1987) ("To do little more than write a check hardly constitutes the operation of a benefit plan.")).

Provident argues that an ERISA plan can be established "rather easily." Dkt. 51 at 7 (quoting *Credit Managers Ass'n. v. Kennesaw Life & Acc. Ins. Co.*, 809 F.2d 617, 625 (9th Cir. 1987)). It argues that ERISA does not require an employer "administrative scheme" but also asserts that D.R. Horton does continue to provide administrative

services for the IDI policy. *Id.* at 11. It also argues that the fact D.R. Horton never filed a Form 5500 for the IDI policy (like it does annually for its Long-Term Benefits plan) does not mean that IDI policy is not ERISA-regulated. *Id.* (citing *Scott v. Gulf Oil Corp.*, 754 F.2d 1499, 1503 (9th Cir. 1985)). It argues that once an ERISA plan is established, the employer's failure to comply with the administrative and reporting requirements detailed in ERISA does not preclude ERISA from operating to protect an employee's interest in the plan. *Id.* at 11–12 (citing *Blau v. Del Monte Corp.*, 748 F.2d 1348, 1352 (9th Cir. 1984)).

The flaw in Provident's argument is that no ERISA plan has yet been established. Provident is correct that failure to comply with ERISA's reporting and disclosure requirements does not remove a plan from ERISA coverage. But it is nonetheless relevant to the initial questions of who established and who administers the plan. *du Mortier v. Mass. Gen. Life. Ins. Co*., 805 F. Supp. 816, 821 (C. D. Cal. 1992).

Leaving aside for now its claim that the IDI policy is a part of D.R. Horton's existing, larger ERISA plan, Provident cannot establish the existence of a plan based on the IDI policy itself. It names no fiduciary, and there is no evidence that its claimed "administrator," HFCB, has provided any substantive administrative functions for it. Provident relies on an email from Provident employee Begley to D.R. Horton employees outlining his view that D.R. Horton will send quarterly reports to HFCB, and that HFCB will provide other administrative services, Dkt. 39-7, but there is no evidence that that ever occurred. The policy includes no reference to amending the policy, or any identification of who has authority to do so.

The Ninth Circuit strictly construes ERISA's statutory requirements regarding plan documents, and where the statutory requirements are lacking, there is no ERISA plan. *Cinelli*, 61 F.3d at 1441 (citing *Watkins v. Westinghouse Hanford Co.*, 12 F.3d 1517 (9th Cir. 1993)). This is so because "it is the reality of the plan, fund or program and not the decision to extend certain benefits that is determinative.'" *Id.* at 1442 (quoting *Watkins*, 12 F.3d at 1523).

The reality of the IDI policy itself is that it lacks specific statutory elements of an ERISA plan as a matter of law. Provident has not established the first element of its ERISA defense, i.e., the existence of a "plan, fund, or program." *See Kanne*, 867 F.2d at 492. Therefore, the Court concludes that Westover has met his burden to demonstrate an absence of evidence to support an essential element of Provident's claim that the IDI policy itself is an ERISA plan.

**2.    The IDI Policy is not Part of D.R. Horton's ERISA Plan.**

Provident's better argument is that the IDI policy is a component of D.R. Horton's larger ERISA plan, which it claims includes the Group Long Term Disability coverage available to all employees, and the IDI plan offered to a smaller group. Dkt. 51 at 12–13. Westover contends that IDI policy is not part of D.R. Horton's ERISA plan. Dkt. 54 at 9–12.

A plan can qualify as an ERISA plan itself, or be part of a package, some of which are ERISA plans. *Fisher v. Prudential Ins. Co. of Am.*, 842 F. Supp. 397, 400 (N.D. Cal. 1993). A separate benefit plan must be administered separately to avoid being part of a multi-benefit ERISA plan. *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 107–08 (1983).

The test for whether the IDI policy is part of the ERISA plan is whether the policy and the plan are "administered as a unit." *du Mortier*, 805 F. Supp. at 819.

Both parties rely on these authorities, as construed in *Cox ex rel. Cox v. Reliance Standard Life Ins. Co.*, No. 1:13-CV-00104 AWI JLT, 2013 WL 2156546, at *5 (E.D. Cal. May 17, 2013). *See* Dkt. 51 at 12; Dkt. 54 at 9–12. Provident argues that under *Cox*, the Court can and should consider D.R. Horton's employee benefit program as a whole. Dkt. 33 at 11. It argues that even a plan that would be exempt from ERISA on its own can be part of an ERISA plan. *Id.* at 12. It relies primarily on its claim that it coordinated its elimination period with the Group LTD's elimination period. *Id.* It argues that *Bender v. Unum Group*, No. 16-cv-03990-PJH, 2016 WL 5420156 (N.D. Cal. Sept. 28, 2016), held that where an IDI policy issued as a supplemental disability coverage for high-earning employees was issued pursuant to the employer's supplemental disability plan, the plan was governed by ERISA. *Id.*

Westover emphasizes that, here, the insurers are different, and the administrators are different. He argues that under *Cox* and *du Mortier*, the fact that the IDI policy and the D.R. Horton ERISA plan were not administered "as a unit"—they were offered, issued, and administered by entirely separate entities—demonstrates that they were separate benefits, and that the IDI policy is not part of D.R. Horton's ERISA plan. Dkt. 54 at 11–12. *Compare with Fisher v. Prudential Ins. Co. of Am.*, 842 F. Supp. 397, 401 (N.D. Cal. 1993) (multiple policies were part of the ERISA same plan where they were issued by the same insurer, administered by the same administrator, and appeared on the same Form 5500).

1       Westover argues that D.R. Horton administers its ERISA plan, and its agent, IPS
2  Advisors, annually files on its behalf ERISA Form 5500 reports detailing the plan. Dkt.
3  54 at 10–11; *see also* Dkt. 41-6 (Form 5500). D.R. Horton has not ever included the IDI
4  policy on its Form 5500. Dkt. 54 at 10 (citing *inter alia* Dkt. 41-3, Deposition of Kathy
5  Strickland ("Strickland Dep.") at 22:23–24:10). Westover correctly contends that this fact
6  supports the conclusion that the individual IDI policy is separate from the D.R. Horton
7  ERISA plan. *See* Dkt. 54 at 10 n.2 (citing *Nosrati v. Provident Life & Accident Ins. Co.*,
8  383 F. Supp. 3d 990, 995 (C.D. Cal. 2019)).

9       Westover also argues that D.R. Horton has no administrative scheme for handling
10 claims or benefits under the IDI policy. There is no evidence that D.R. Horton reviewed
11 or investigated any employee's benefits claim or that it can interpret or cancel the policy.
12 It makes no reports and itself distributes no information about the IDI policy. Westover
13 argues that Provident is a mere premium conduit; all it does is deduct the IDI policy
14 premium from the employee's pay.

15      Westover argues that Provident (through HFCB) told D.R. Horton's eligible
16 employees that the IDI policy "does not coordinate with" their Group LTD and that
17 claims were handled separately. Dkt. 54 at 10 (citing Dkt. 41-10); *see also* Dkt. 51 at 13.
18 Provident segregated the IDI enrollment meetings and communications from those
19 related to its Group LTD plan. Dkt. 54 at 10 (citing *inter alia* Strickland Dep. at 27:5–
20 29:25). He argues there is no evidence supporting the claim that the IDI policy is part of
21 the D.R. Horton ERISA plan.

22

1	Provident responds that the Ninth Circuit has rejected Westover's contention that
2	the employer must administer the policy to establish an ERISA-governed plan. Dkt. 71 at
3	6 (citing *Qualls v. Blue Cross of Calif., Inc.*, 22 F.3d 839, 843 (9th Cir. 1994); *Bogue v.*
4	*Ampex Corp.*, 976 F.2d 1319, 1322 (9th Cir. 1992)). *Qualls* does not address the
5	argument that the *employer* must administer the plan, but it distinguishes "a mere *benefit*,
6	such as the simple payment of a sum of money," from a *plan*, "which requires some
7	supervision or ongoing administration." *Qualls* at 843. It explains that the plan at issue
8	created a "complex ongoing relationship between the insureds and the insurer which
9	required constant administrative attention by the insurer." *Id.* (distinguishing *Port Halifax*
10	*Packing Co. v. Coyne*, 482 U.S. 1 (1987)).
11	But even if the employer does not have to be the plan administrator, the plan
12	nevertheless must have an administrator. Here, there is none. Provident concedes that
13	D.R. Horton did not administer the plan and argues that it was not required to do so to
14	make the IDI policy part of the D.R. Horton ERISA plan. HFCB concedes it has never
15	administered the plan, despite being described at various times as the IDI "administrator."
16	There is no evidence that IPS Advisors, which administers D.R. Horton's Group LTD
17	plan, administers the IDI policy. There is no plan administrator for the IDI policy, as a
18	matter of law.
19	Provident's explanation for each fact supporting the conclusion that the IDI policy
20	was *not* part of D.R. Horton's ERISA plan does not alter the fact that there is no evidence
21	supporting the contention that it *was*. It is true that such a plan can be established "rather
22	easily," which leads the Court to wonder why Provident was not clearer about what it was

selling. Provident and HFCB came to D.R. Horton to sell IDI policies to its higher-paid employees. Nothing in any of the materials they provided to D.R. Horton or its employees suggests that Provident told anyone it was selling an ERISA product, or that the IDI policy would be part of the existing D.R. Horton Group LTD ERISA plan.

Provident and HFCB did not arrange to have anyone administer the plan, at all, much less to have IPS advisors take over that function. They did not arrange to report the plan on a Form 5500. Deuink knew in April 2020, well before Westover sued, that HFCB "ha[d] nothing" in its records about the IDI policy being ERISA. Dkt. 89 at 2. He knew that HFCB had never been asked to prepare or file a Form 5500, and he knew that Provident "works a little different" and does not volunteer to answer the ERISA question up front. *Id*. This may be because while ERISA preempts state law claims, which is a benefit to insurers, it also imposes on employers detrimental fiduciary and administrative obligations that they may not be willing to accept. One selling an IDI policy may get further in the door if it is not marketed or described as an ERISA plan.

There is no evidence in the record that the IDI policy was ever meant to be, or ever was, administered "as a unit" with the Group LTD plan, which was issued and administered by other entities. The failure to include the IDI plan on the Form 5500 D.R. Horton was already filing for its Group LTD plan may not be dispositive, but it is telling. The few conclusory statements supporting Provident's position—the repeated claim that "D.R. Horton hired HFCB," for example—have been contradicted or clarified. D.R. Horton never hired or paid HFCB; Provident did. And despite describing itself as the administrator, HFCB never administered any IDI policy for D.R. Horton. HFCB has not

been involved in any IDI claim. Dkt. 76-1, Deposition of Leslie Weaver Morton, at 95:24–96:11. In short, Provident's claim that the IDI policy is part of D.R. Horton's Group LTD ERISA plan is conclusory and unsupported by the evidence. Provident has not met its burden of proof on this issue, and the IDI policy is not an ERISA plan as a matter of law.

\* \* \*

Provident's Motion for Summary Judgment on Westover's state law claims based on ERISA preemption, Dkt. 33, is **DENIED**. Westover's Motion for Summary Judgment on Provident's ERISA preemption affirmative defense, Dkt. 38, is GRANTED, and that affirmative defense is **DISMISSED**. Westover's Motion to Strike, Dkt. 48, is **DENIED**, but his Motion for Sanctions is **GRANTED**.

**IT IS SO ORDERED.**

Dated this 19th day of January, 2022.

BENJAMIN H. SETTLE
United States District Judge

ORDER - 18